Bertha G. BRYANT, Plaintiff,

v.

FEDERAL KEMPER INSURANCE COMPANY, Defendant.

Civ. A. No. 86C–AU–7.

Superior Court of Delaware, Sussex County.

Submitted: Jan. 26, 1988.
Decided: April 12, 1988.

William D. Fletcher, Jr., Catherine T. Hickey, and Charles Whitehurst, Schmittinger and Rodriguez, P.A., Dover, for plaintiff.

Robert B. Young, and Mary E. Sherlock, Young & Sherlock, Dover, for defendant.

## OPINION

CHANDLER, Judge.

In count one of her complaint against defendant Federal Kemper Insurance Co., ("Kemper"), plaintiff Bertha Bryant seeks a declaratory judgment revising her insurance policy to reflect $50,000 per person/100,000 per occurrence of uninsured/underinsured motorist coverage ("UM/UIM coverage") and recovery of UIM benefits pursuant to the revised policy. In count two plaintiff seeks compensatory and punitive damages from Kemper for its alleged bad faith in refusing to provide payment under the revised coverage. Kemper has moved for summary judgment on both counts. This is the Court's decision on Kemper's motion.

The Facts:

The following undisputed facts have been drawn from the pleadings and the discovery record. On Feb. 12, 1985, plaintiff bought automobile insurance for her 1968 Plymouth Fury from Jack Christopher, an agent for Kemper. An insurance

application was filled out designating $50,-000/100,000 bodily injury liability coverage and $15,000/30,000 UM/UIM coverage. Plaintiff signed the application which contained the following printed statement: "I further certify that I have read all Uninsured and Underinsured Motorist Coverage options applicable to my state. I have selected or rejected such coverage as indicated." Plaintiff also signed an application supplement which contained the following printed language under the heading UNINSURED/UNDERINSURED VEHICLE COVERAGE: "(Optional) (Available in limits up to the Bodily Injury Liability Limits or $100,000/300,000 whichever is less)." Kemper subsequently issued plaintiff insurance policy number R 0557532 on March 7, 1985.

On May 30, 1985, plaintiff was driving her car when she was struck by a car owned and operated by David Roberts. Plaintiff brought a personal injury action against Roberts. On April 8, 1986, plaintiff settled this claim with Roberts and his insurer Liberty Mutual Insurance Company for his liability limit of $40,000. At the same time plaintiff executed a general release in their favor while expressly reserving the right to make a claim against Kemper for UM/UIM coverage.

On April 10, 1986, plaintiff's counsel notified D.R. Groves, a claims representative for Kemper, that plaintiff considered her UM/UIM coverage revised upward to $50,-000/100,000 because the agent had failed to offer plaintiff the opportunity to purchase UM/UIM coverage equal to her bodily injury liability limits, as required by 18 *Del.C.* § 3902(b).[1] Plaintiff's counsel informed Groves of the $40,000 settlement and made a claim under the UM/UIM provisions of plaintiff's purportedly revised policy, demanding the limit of $50,000. On May 6, 1986, Groves responded to this demand by asserting that plaintiff had signed both her application supplement and her insurance application which certified that

she had selected the minimum limits for UM/UIM coverage. On May 19, 1986, plaintiff's counsel notified Groves that the provisions of the application and application supplement on which he relied were insufficient under Delaware law to satisfy the requirements of 18 *Del.C.* § 3902(b). Counsel requested presentation of further evidence that plaintiff had selected the minimum limits or else he would consider the policy to be revised upward and would demand payment of the same. Groves responded on June 10, 1986 with a letter stating that he was consulting with Kemper's defense attorney for his opinion on the case. On July 24, 1986, F.C. Dorman, a claims adjuster for Kemper, took a statement from Jack Christopher regarding the discussions that took place between plaintiff and Christopher when plaintiff applied for insurance in February 1985. On August 7, 1986, plaintiff filed her complaint in this action in Superior Court.

The Law.

On a motion for summary judgment pursuant to Superior Court Civil Rule 56, the moving party has the initial burden of showing that no material issues of fact exist and that he is entitled to a judgment as a matter of law. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979); *Oliver B. Cannon & Sons v. Dorr–Oliver Inc.,* Del. Super., 312 A.2d 322 (1973). The burden then shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists. 405 A.2d at 681. In considering motions for summary judgment, the Court must view the facts in a light most favorable to the nonmoving party. *Shultz v. Delaware Trust Co.,* Del.Super., 360 A.2d 576 (1976).

Discussion.

■ Defendant's first argument in support of its motion for summary judgment is that plaintiff has forfeited her right to recover UIM benefits because she has breached the terms of her insurance policy

---

1. 18 *Del.C.* § 3902(b) provides:

    (b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,-000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

by executing a general release in favor of the alleged tortfeasor. Under Part VI section 4 entitled "Our Right to Recover Payment," the policy states in relevant part:

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

Defendant claims that under *Home v. Maldonado,* Del.Supr., 515 A.2d 690 (1986), it has a statutory right of subrogation against David Roberts, up to $15,000, for any UIM benefits paid to the plaintiff. However, by releasing the alleged tortfeasor and violating the above provision of her policy, plaintiff has precluded defendant from pursuing its statutory subrogation right to its prejudice.

Plaintiff argues that her settlement with and release of Roberts was in accordance with statutory law under 18 *Del.C.* § 3902(b)(3).[2] Additionally, she contends that defendant has not been prejudiced by the release because the alleged tortfeasor in this case carried liability insurance in excess of the amount required by the Financial Responsibility Law, *see* 21 *Del.C.* § 2902,[3] and thus under *Home* is insulated against any further liability.

The effect of a breach of an insurance policy provision on an insured's right to recover benefits has been considered in at least two previous Delaware cases. *See State Farm Mutual Automobile Insurance Co. v. Johnson,* Del.Supr., 320 A.2d 345 (1974); *Hall v. Allstate Insurance Co.,* Del.Super., C.A. No. 79C–DE–56, Poppiti, J. (Jan. 11, 1985). *Johnson* involved a failure by the insured to notify the insurer of his claim "as soon as practicable." 320 A.2d at 346. *Hall,* more closely analagous to the present case, dealt with a settlement and release of a tortfeasor that violated a "consent-to-settlement" provision of an insurance policy. C.A. No. 79C–DE–56 at 14. In both cases, the courts held that the carrier was not freed from liability on its policy in the absence of a showing that the breach caused the insurer to suffer prejudice. 320 A.2d at 347; C.A. No. 79C–DE–56 at 17. In adopting this test, however, the Superior Court in *Hall* further held that when a breach was shown, a rebuttable presumption of prejudice arose. C.A. No. 79C–DE–56 at 20 (citing *Gould v. Prudential Property & Casualty Insurance Co.,* Fla.App., 443 So.2d 127 (1983), *petition for rev. denied,* Fla.Supr., 451 So.2d 848 (1984)). The burden then shifted to the party seeking to impose liability to demonstrate lack of prejudice by competent evidence. *Id.* Prejudice to the insurer in the context of a violation of a consent-to-settlement provision, as in the case here, was the loss of subrogation rights against the tortfeasor released by the settlement.

Although I will follow the *Hall* test for resolving this issue, I note that *Hall* was decided before *Home v. Maldonado.* This fact is significant because the Supreme Court, in construing the 1982 amendments to 18 *Del.C.* § 3902, expressly limited the insurer's statutory right of subrogation against an underinsured motorist to the amount of coverage required by the Financial Responsibility Law.[4] 515 A.2d at 696.

2. 18 *Del.C.* § 3902(b)(3) states:

(3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments.

3. 21 *Del.C.* § 2902, as amended, requires as proof of financial responsibility an owner's or operator's policy of liability insurance subject to the following limits: $15,000 per person/$30,000 per accident and $5,000 property damage. 64 *Del.Laws* ch. 198.

4. In *Home,* the insureds filed suit against their insurer to recover UIM benefits and the insurer filed a third-party complaint against the motorist, Maldonado, who was the alleged tortfeasor. At the time of the accident the insureds had a $100,000/300,000 liability policy and UIM coverage of $25,000/50,000. Their UIM coverage was subsequently revised by the insurer to $100,000/300,000. Maldonado had liability coverage with a maximum limit of $25,000 which he paid in settlement to the insureds in exchange for a general release. The insureds thereafter sought $75,000 in UIM benefits from their insurer. The insurer settled with the in-

Presumably prior to the decision in *Home* and implicit to the decision in *Hall*, the insurer could have had unlimited subrogated rights against an underinsured motorist. This was the interpretation advocated by the insurer in *Home* based upon the fact that § 3902(b) does not include a specific provision limiting subrogation similar to the one in the event of recovery from an uninsured motorist. *See* § 3902(a)(4).[5] The Supreme Court, however, rejected this as leading to the illogical result of discouraging a person from carrying insurance above the minimum limits. *Id.* The Court construed section 3902(a)(4) to apply to both the uninsured and the underinsured motorist and held that the alleged tortfeasor, an underinsured motorist, was insulated from further liability to the insurer because he carried liability insurance in compliance with the Financial Responsibility Laws. *Id.* at 697.

An underinsured motor vehicle is one for which there may be liability coverage in effect, but the limits of coverage total less than the limits provided by the UM coverage. § 3902(b)(2).[6] This is in contrast to an uninsured motor vehicle which is defined, *inter alia,* as one for which there is no liability insurance in at least the amounts required by the financial responsibility law. § 3902(a)(3)(a.).[7] An underinsured motorist by definition, therefore, carries liability insurance in amounts at least equal to the amounts required by law.

Under *Home* an underinsured motorist is protected from further liability to an insurance carrier once he pays the insured the amount of his liability coverage in settlement or judgment. Since an insurer has no obligation to make any payment under its UIM coverage until after the limits of liability insurance policies available to the insured have been exhausted, § 3902(b)(3), the insurer's subrogation right will have already been rendered moot before it makes any payment to its insured. A settlement and release of an underinsured motorist, therefore, cannot prejudice the insurer because the limitation on subrogation imposed by the Supreme Court converts this right for all practical purposes into a nullity.

Plaintiff has convinced the Court that, because the alleged tortfeasor, David Roberts, carried liability insurance in excess of that required by law, his release has occasioned no prejudice to the defendant in this case. Plaintiff, therefore, has not forfeited her right to UIM coverage by executing a general release in Roberts' favor.

■ Kemper's second argument in support of its motion for summary judgment is that the record clearly reflects that plaintiff was offered additional UM/UIM coverage in compliance with § 3902(b) and that she affirmatively rejected such offer. Kemper refers to the deposition of its insurance agent, Jack Christopher, for evidence that on Feb. 12, 1985, plaintiff was

sureds for $25,000 and pursued its third-party complaint for subrogation against Maldonado. Maldonado raised as an affirmative defense § 3902(a)(4) as insulating him from further liability and summary judgment was granted in his favor.

5. 18 *Del.C.* § 3902(a)(4) provides:

(4) In the event of payment to any person under uninsured vehicle coverage and, subject to the terms of such coverage, to the extent of such payment, the insurer shall be entitled to the proceeds of any settlement recovery from any person legally responsible for the bodily injury or property damage as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle; *provided, that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.* (Emphasis added.)

6. 18 *Del.C.* § 3902(b)(2) provides:

(2) An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident total less than the limits provided by the uninsured motorist coverage. These limits shall be stated in the declaration sheet of the policy.

7. 18 *Del.C.* § 3902(a)(3)(a.) provides:

(3) For the purpose of this section, an uninsured vehicle shall be defined as:

a. One for which there is no auto liability bond, insurance or other security applicable at the time of the accident in at least the amounts required by the financial responsibility law where the auto is principally garaged or registered;

told by Christopher that she could purchase additional UM/UIM coverage equal to her liability limits and that it would cost her an additional $4.00 in premiums. According to Christopher, plaintiff told him that she wanted to get by as cheaply as possible because she had an old car and limited finances.

In her complaint plaintiff alleges that Kemper did not offer her UM/UIM coverage in the amount of $50,000/100,000 and that she never affirmatively rejected an offer of coverage in that amount. According to her deposition, she denies asking for the lowest price insurance that she could get. Although plaintiff acknowledges her signatures on the documents in question, she does not recall Christopher discussing her right to obtain UM coverage up to the amounts of her liability limits.

In *Morris v. Allstate Insurance Co.*, Del.Super., C.A. No. 82C–OC–23, Taylor, J. (July 10, 1984), written language in an application form nearly identical to that in the application supplement at issue here was held not to constitute a meaningful offer of UM coverage as contemplated by statute because the language lacked affirmative force and failed to inform the applicant of the cost of such insurance. The Court defined a meaningful offer as a "communication which must clearly offer to issue the specific coverage," and one which "must be made in the same manner and with as much emphasis as the insurer's other coverage." *Id.* at 4. The duty imposed by statute on the insurer is to offer the insurance in a way that the insured can make an informed decision. *Id.* (citing *O'Hanlon v. Hartford Accident & Indemnity Co.*, D.Del., 522 F.Supp. 332 (1981), *aff'd*, 3rd Cir., 681 F.2d 806 (1982)). And in order for the insured to make a meaningful choice, it is essential that he be informed of the cost of the additional coverage. *Morris*, C.A. No. 82C–OC–23 at 4.

The application supplement in this case suffers from the same failings as those of the application in *Morris* and, accordingly, is insufficient to meet the requirements of an offer of additional insurance under § 3902(b). Although the requirements could have been satisfied by an oral communication by the insurance agent, *see id.* at 5, the evidence in the record reveals a dispute as to whether any discussion of UM/UIM coverage took place between the plaintiff and agent. Viewing the evidence in a light most favorable to the nonmoving party, plaintiff's testimony that she does not recall any such discussion with the agent creates the reasonable inference that none took place. There being a genuine issue of material fact concerning whether an offer was made, Kemper's motion for summary judgment must be denied on this ground as well.

Kemper's next argument is that plaintiff's UIM claim is subject to binding arbitration. Plaintiff's policy contains a provision stating that in the event the insurer and a covered person disagree: "1. [w]hether that person is legally entitled to recover damages ...; or 2. [a]s to the amount of damages; either party may make a demand for arbitration." A decision agreed to by two of the three arbitrators is binding as to the issues outlined above, except that if the amount of damages awarded exceeds the minimum limit for liability specified by the financial responsibility law of Delaware, either party may demand the right to trial. On July 16, 1987, 11 months after this action was commenced, counsel for Kemper sent a written demand for binding arbitration to plaintiff's attorney.

Plaintiff has vigorously opposed Kemper's argument for summary judgment based upon its arbitration demand with several arguments expounded at length in her Answering Brief. Rather than discuss the issues raised by the parties in their briefs, I will briefly note that the matter is not ready for decision at the summary judgment stage of this proceeding where there is a material fact in dispute. Since Kemper did not raise arbitration as an affirmative defense in its answer to plaintiff's complaint, in the event the Court reforms plaintiff's policy to reflect the higher UM/UIM coverage, I will then entertain a motion from Kemper for leave to amend its pleadings.

The fourth argument raised by Kemper in support of its motion for summary judgment is that, should the Court reform plaintiff's UM/UIM coverage to equal her liability limits of $50,000/100,000, plaintiff's maximum recovery is limited to $10,000, the difference between her coverage and $40,000, the liability limit of the alleged tortfeasor. Since no ruling on the reformation of plaintiff's coverage can be made at the summary judgment stage of this case, there is no need to discuss this issue at this time.

 Kemper's last argument relates to count two of plaintiff's complaint. Kemper contends that plaintiff has failed to state a claim of bad faith. In order to establish a claim of bad faith, plaintiff must show that the insurer's refusal to honor its contractual obligation was clearly without any reasonable justification. *Casson v. Nationwide Insurance Co.*, Del.Super., 455 A.2d 361, 369 (1982).

> This standard of reasonableness tests the judgment of the insurer's agent in deciding to contest the insurer's liability in the face of a claim. The ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability.

*Id.* Kemper argues that at the time it denied plaintiff's claim, it had reasonable grounds for doing so. It had reviewed plaintiff's insurance application and application supplement, conferred with counsel and with agent Jack Christopher who had informed Kemper that he had communicated the offer of increased UM/UIM coverage and its cost to plaintiff. As a result, it was Kemper's rational belief that it had complied with 18 *Del.C.* § 3902(b) and that plaintiff's policy should not be reformed.

Kemper has shown the absence of a genuine issue of any material fact concerning its alleged bad faith. The burden has now shifted to the plaintiff, the nonmoving party, to demonstrate the existence of a genuine issue of fact. Plaintiff, however, has failed to respond to Kemper's argument in her Answering Brief. Nor has she produced any evidentiary material sufficient to demonstrate a dispute of material fact. As plaintiff has not met her burden under Superior Court Civil Rule 56(e), I will grant summary judgment in favor of the defendant on count two of the complaint. The remainder of Kemper's motion is denied.

Accordingly, defendant's motion for summary judgment is denied in part and granted in part.

IT IS SO ORDERED.