Victor J. HUMM, Plaintiff
Below, Appellant,

v.

AETNA CASUALTY AND SURETY COM-
PANY, a corporation of the State of
Connecticut, Defendant Below and
Third–Party Plaintiff Below, Appellee,

v.

ALFRED D. BRUCE, JR., INC., a Pennsyl-
vania corporation, and Alfred D. Bruce,
Jr., individually, Third–Party Defen-
dants Below, Appellees.

No. 323, 1994.

Supreme Court of Delaware.

Submitted: Feb. 28, 1995.

Decided: April 18, 1995.

Sotiere S. Kapsalis (argued) Wilmington,
for appellant.

Gary W. Aber (argued) of Heiman, Aber &
Goldlust, Wilmington, for appellee Aetna
Cas. and Sur. Co.

Before WALSH, HOLLAND and
HARTNETT, JJ.

HARTNETT, Justice:

In this appeal, we hold that, under 18
Del.C. § 3902, the Delaware Uninsured and
Underinsured Motor Vehicle Insurance Cov-
erage Statute, an insurance carrier's duty to
provide a minimum level of uninsurance cov-
erage under subsection (a) is separate and
distinct from its duty, under subsection (b),
to offer additional uninsured/underinsured
coverage up to the amount of the basic liabili-
ty policy. Consequently, the requirement for
a written rejection of the coverage provided
under subsection (a) is not applicable as to
the additional uninsured/underinsured cover-
age described in subsection (b).

I.

This is an interlocutory appeal from the
Superior Court's denial of the summary judg-
ment motion of Appellant–Plaintiff Below
Victor J. Humm ("Humm"). The appeal is
without merit and the denial of summary
judgment must, therefore, be AFFIRMED.

On appeal from the Superior
Court's construction of a statute, this Court
exercises *de novo* review for legal error. *Al-
fieri v. Martelli,* Del.Supr., 647 A.2d 52, 53
(1994); *Baldwin v. Benge,* Del.Supr., 606

A.2d 64, 67 (1992). Where there is a dispute over the meaning or effect of a statute, a court seeks to ascertain the legislative intent. *Alfieri v. Martelli*, 647 A.2d at 56; *State v. Cephas*, Del.Supr., 637 A.2d 20, 23 (1994).

## II.

In June 1987, Humm's daughter, Kimberly M. Humm, was injured while riding in the motor vehicle that was covered by her father's liability insurance policy issued by Appellee–Defendant Below, Aetna Casualty and Surety Company ("Aetna"). The policy was purchased through Aetna's agents, Appellee–Third–Party Defendants Alfred D. Bruce, Jr., Inc. and Alfred D. Bruce, Jr. (collectively "Bruce"). It provided for $200,000 liability coverage but only $30,000 in uninsured/underinsured coverage. Humm had been covered by a $50,000 liability coverage policy with Aetna until 1987 when his wife contacted Bruce to increase the policy limits. Although it is claimed that Mrs. Humm requested $300,000 in liability coverage, the policy that was issued in April 1987 was for $200,000 in liability coverage.

Bruce contends that it offered Humm uninsured/underinsured coverage up to the amount of the new liability limits of $200,000, but that Humm orally rejected the offer in favor of the $30,000 uninsured coverage. Humm, on the other hand, contends that Bruce never offered him the increased uninsured/underinsured coverage. Further, Humm asserts that had the offer of additional coverage been made, he would have chosen to increase his uninsured/underinsured coverage to an amount equal to his liability coverage. Factual disputes, therefore, exist as to whether Bruce offered Humm additional uninsured/underinsured coverage and, if so, whether Humm rejected the offer. Humm, however, asserts that the factual issues are irrelevant because 18 Del.C. § 3902 requires that the additional uninsured/underinsured coverage must have been provided to him unless he rejected it in writing. The parties agree that no written rejection of the additional coverage was ever obtained. Humm, therefore, sought reformation of his policy in the Superior Court to increase his uninsured/underinsured coverage to $200,000.

Humm argues that it is the intent of 18 Del.C. § 3902 that the additional uninsured/underinsured coverage required in subsection (b) is subject to the written rejection requirement provided in subsection (a), notwithstanding that subsection (b) contains no such language. Humm asserts, as a matter of law, that Aetna's obligation to have provided him uninsured/underinsured coverage equal to his liability coverage has not been discharged and that Aetna, therefore, must be deemed to have made him a continuing offer of the additional coverage that he may now accept.

## III.

Humm contends that the Superior Court, in denying his motion for summary judgment, incorrectly interpreted 18 Del.C. § 3902. Subsection (a) of that section imposes on an insurance carrier the duty to provide to the purchaser of a motor vehicle liability insurance policy certain minimal uninsured motor vehicle coverage unless the insured rejects that coverage in writing. Subsection (b) provides for additional uninsured coverage ("uninsured/underinsured coverage") but *does not contain* a requirement that a rejection of the additional coverage be in writing.

Humm argues, nevertheless, that 18 Del.C. § 3902(b) requires that an insurance carrier that issues a motor vehicle liability insurance policy must include in the policy the additional uninsured/underinsured coverage required to be offered by that subsection, unless the insurance carrier obtains a written rejection of the additional coverage from the insured. Because Humm never executed a written rejection of the additional coverage, he contends that he is entitled, as a matter of law, to the reformation of his policy to include uninsurance/underinsurance coverage equal to the amount of his liability coverage.

## IV.

The relevant portions of 18 Del.C. § 3902 provide:

§ 3902. **Uninsured and underinsured vehicle coverage; insolvency of insurer.**

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

(1) No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.

\*    \*    \*    \*    \*    \*

(b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage. . . .

### V.

The Superior Court correctly interpreted 18 Del.C. § 3902(a) and (b) as setting forth two different rules for the providing of insurance in addition to the primary liability coverage purchased by an insured. *Victor J. Humm v. Aetna Casualty & Surety Co.,* Del.Super., C.A. No. 90C–10–212, 1994 WL 465553, Del Pesco, J. (July 20, 1994). Under the Superior Court's interpretation of 18 Del.C. § 3902, subsection (a) imposes a duty on the insurance carrier who issues a motor vehicle liability coverage policy to include in the policy a minimum level of uninsured coverage that the insured will be deemed to have accepted unless he rejects the coverage in writing. The Superior Court also held that subsection (b) imposes a further duty on the insurance carrier to offer uninsured/underinsured coverage in addition to that mandated by subsection (a), but does not provide that an insured's rejection of that offer will be valid only if it is in writing. We find that the Superior Court's analysis is correct as a matter of law.

### VI.

Humm incorrectly argues that the term "uninsured" in 18 Del.C. § 3902 also encompasses "underinsured," notwithstanding that they have different meanings. He argues that the requirements of subsection (a), including the requirement of a written rejection of the coverage required by that subsection, also applies to the uninsured/underinsured coverage described in subsection (b). Distinctive language, however, is used in the two subsections. Subsection (a) uses the word "uninsured" while (b) does not. Subsection (b) uses the word "underinsured" while (a) does not. The text therefore clearly shows that there is a difference between the coverage mandated by each subsection. *Alfieri v. Martelli,* 647 A.2d at 54. The distinctions, however, between subsections (a) and (b) are not just based on the use of the word "uninsured" or the word "underinsured".

Subsections (a) and (b) also differ in the amount of coverage required to be made available by the insurance carrier under each subsection. Even assuming, *arguendo,* that the terms "uninsured" and "underinsured" are interchangeable (which they are not), the separate duties imposed on the insurance carrier in the two subsections are dependent on the amount of coverage involved.

Subsection (a) mandates that the availability of the uninsured coverage required must

be equal to the minimum amount of liability insurance that every owner of a motor vehicle is required to carry, while subsection (b) requires the availability of additional uninsured/underinsured coverage between the minimum required by (a) and the lesser of $100,000/$300,000, or the limits in the basic liability policy. Because Humm's daughter is seeking coverage for injuries that exceed the $40,000 liability insurance of the other vehicle involved in the accident (the underinsured vehicle), Humm is seeking reformation of his policy to provide uninsured/underinsured coverage of $200,000—the amount of his liability coverage. Regardless of how this coverage is labeled, it falls within subsection (b) which deals with the purchase of additional coverage within those limits.

## VII.

A careful review of the text of 18 Del.C. § 3902 necessarily leads to the conclusion that the General Assembly intended to provide distinct requirements as to the purchase of a minimum level of uninsurance coverage (subsection (a)) and the purchase of additional uninsurance/underinsurance coverage (subsection (b)). This intent can be gleaned both from the text of the two subsections and from the purpose of the statute.

The text of 18 Del.C. § 3902 clearly indicates that purchases of the two types of coverage (distinguished by the amount of insurance available) are governed by different procedures. Under subsection (a), a minimum level of uninsured coverage is provided unless rejected in writing. The General Assembly thus requires that an insured who purchases a motor vehicle liability insurance policy must also purchase coverage against injury by an uninsured motorist, equal to the amount of coverage in the primary liability policy, unless the insured rejects the additional coverage in writing. The mechanism under subsection (a), by which a motor vehicle liability insurance policy is issued with or without the minimum uninsured coverage, therefore, does not require the traditional offer and acceptance normally required to form a contract. Rather, the additional minimum uninsured coverage is automatically included in the primary liability policy unless the insured executes a written rejection of the coverage.

On the other hand, the text of subsection (b), governing the issuance or nonissuance of uninsured/underinsured coverage that exceeds the minimum coverage provided in subsection (a), provides an entirely different procedure. Subsection (b) expressly requires an offer by the insurance carrier and describes the legal effect of an acceptance of that offer by the insured. The General Assembly thereby provided for the retention of the traditional means of contracting; that is, by an offer and the acceptance of the offer. There is, however, no reference in subsection (b) to a rejection of the offer, written or oral, and consequently, no condition is imposed as to the form a rejection must take. By the express language of subsection (b), the insurance carrier has fulfilled its duty when it makes a meaningful offer to the insured. Unless the insured accepts that offer, the insurance carrier is, therefore, under no further duty to include the additional coverage in the policy.

## VIII.

"The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature." *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982). *See also In Re Adoption of Swanson*, Del.Supr., 623 A.2d 1095, 1097 (1993). When a legislature decides to insert a provision into a statute, that decision is presumed to be purposeful. *Giuricich*, 449 A.2d at 238 (quoting *C & T Associates, Inc. v. Government of New Castle County*, Del.Ch., 408 A.2d 27, 29 (1979)). Similarly, the decision to omit a provision is also deemed to be purposeful, particularly where a legislature has demonstrated its ability to include the same provision in a different section of the statute. *Id.* Thus, where, as here, the General Assembly has omitted the written rejection requirement from subsection (b), while demonstrating its proficiency in including that requirement in subsection (a), the omission must be deemed to be intentional. A Court cannot impose a written rejection requirement where the General Assembly excluded that requirement and instead used language

requiring an offer and acceptance. *See Alfieri,* 647 A.2d at 54; *Giuricich,* 449 A.2d at 238.

## IX.

The different requirements of 18 Del.C. § 3902(a) and (b) also indicate the different legislative purposes underlying the two subsections. The intent of subsection (a) is to provide that "any individual who does not expressly opt out [of the minimal uninsured coverage] in writing will be assured of the same minimum pool of resources from which to seek compensation for injuries inflicted by an uninsured motorist as he would have in the event of injuries inflicted by a person having the minimum [liability] coverage permitted under Delaware law[.]" *O'Hanlon v. Hartford Accident & Indem. Co.,* D.Del., 457 F.Supp. 961, 964 (1978) (quoting the earlier decision reported at 439 F.Supp. 377, 382–83 (1977)). Thus subsection (a) is designed to promote a mandatory minimum of uninsured motorist coverage. *See State Farm Mut. Auto. Ins. Co. v. Arms,* Del.Supr., 477 A.2d 1060, 1063 (1984).

The intent of subsection (b), however, is to assure that insureds have the right to purchase additional uninsured/underinsured coverage beyond the minimum provided in subsection (a), and assure that they are aware of the extra coverage. This Court has approved the *O'Hanlon* court's reasoning that subsection (b) is a "disclosure mechanism [that] promoted informed decisions on automobile insurance coverage." *State Farm v. Arms,* 477 A.2d at 1064. The focus of subsection (b) is to make additional coverage available above the basic minimum uninsured coverage and then allow the insurer and the insured to engage in traditional means of contracting; that is, by an offer and an acceptance. Conversely, the focus of subsection (a) is to change the traditional means of contracting by requiring a certain coverage unless the insured rejects it in writing.

## X.

Humm's reliance on a passage in *State Farm v. Arms,* 477 A.2d at 1066 is misplaced. This language seems to indicate a require-

ment for a written rejection under 18 Del.C. § 3902(b):

> To meet the burden, an insurer need only comply with the plain language of 18 Del.C. § 3902(b) (Supp.1982). Absent a written rejection of additional coverage communicated to the insurer or its agent within a reasonable time fixed by the insurer, the insurer may assume acceptance of the additional protection, write the coverage to the extent of the lesser of $300,-000 or the bodily injury limits of the policy, charge the additional premium accordingly, and have legal recourse to collect the same.

This language is *obiter dicta* and is, therefore, not binding as legal precedent. *See State ex rel State Highway Dep't. v. 9.88 Acres of Land,* Del.Supr., 253 A.2d 509, 511 (1969); *Opinion of the Justices,* Del.Supr., 198 A.2d 687, 690 (1964). The opinion was rendered in response to the entirely different issue of whether 18 Del.C. § 3902 puts an undue burden on insurance carriers to ensure that a meaningful offer of uninsured/underinsured coverage is made. Because *Arms* did not consider the issue of whether a writing is required to reject the uninsured/underinsured coverage required to be offered by 18 Del.C. § 3902(b), it does not control the outcome of this appeal. There is also an internal inconsistency in *Arms,* as the opinion notes the distinction between "the written rejection element in section 3902(a) and the offer of additional coverage requirement of section 3902(b)[.]" *State Farm v. Arms,* 477 A.2d at 1063 n. 3.

## XI.

We, therefore, conclude that the General Assembly's use of distinct language in 18 Del.C. § 3902(a) and (b) was intended to provide independent and distinct mechanisms to accomplish the different purposes of each subsection. We decline to read into subsection (b) the nonexistent requirement of written rejection that is expressly provided in subsection (a).

The decision of the Superior Court denying summary judgment to Humm is therefore AFFIRMED.

ATTACHMENT

SUPERIOR COURT OF THE STATE OF DELAWARE

SUSAN C. DEL PESCO

JUDGE

Submitted: June 15, 1994

Decided: July 20, 1994

Sotiere S. Kapsalis, Esquire
1216 King Street
Wilmington, DE 19801

Gary W. Aber, Esquire
First Federal Plaza, Suite 600
702 King Street
Wilmington, DE 19801

James F. Kipp, Esquire
1020 N. Bancroft Parkway
P.O. Box 429
Wilmington, DE 19899

Re: *Victor J. Humm v. Aetna Casualty & Surety Company v. Alfred D. Bruce, Jr., Inc. and Alfred D. Bruce, Jr.*

C.A. No. 90C–10–212

Dear Counsel:

This is an insurance coverage case arising out of an automobile policy issued by Aetna Casualty & Surety Company, defendant and third-party plaintiff ("Aetna" or "the insurer"), through its agent, Alfred D. Bruce, Jr., Inc., third party defendant ("Bruce" or "the agent"), to Victor J. Humm, plaintiff ("the insured"). This policy, which became effective April 9, 1987, provided liability coverage in the amount of $200,000 for each accident. The contract also purported to provide uninsured/underinsured motorist coverage in the amount of $30,000 for each accident. On June 16, 1987, the insured's daughter was severely injured as a result of an automobile accident. The liability insurance coverage available to the person causing the injuries was $40,000, a sum considerably less than the value of Humm's daughter's claim.

On October 22, 1990, Humm filed a complaint for reformation of the insurance contract to provide for $200,000 in uninsured/un-derinsured coverage. In support of his claim he alleged that he was not offered the option of obtaining higher uninsured/underinsured motorist coverage as required by 18 *Del.C.* § 3902. The insurer filed a third-party complaint naming Alfred D. Bruce, Jr., Inc., and Alfred J. Bruce, Jr., in his individual capacity, as third-party defendants on June 12, 1992, seeking a declaration that it is entitled to indemnification and/or contribution for any damages which it may be forced to pay in this litigation.

Both Humm and Bruce seek summary judgment. This is the Court's opinion on both of those motions.

## I. The Standard for Summary Judgment

The standard to be met on a motion for summary judgment is that the moving party must establish that there is no genuine issue of material fact. *Moore v. Sizemore,* Del. Supr., 405 A.2d 679 (1979). The party seeking summary judgment bears the initial burden of showing that no material issues of fact are present. *Id.* The party opposing the motion for summary judgment then has the duty to come forward with admissible evidence showing the existence of a genuine issue of fact. *E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.,* Del.Super., 229 A.2d 499 (1967). Summary judgment may be granted only where, upon consideration of the facts in a light most favorable to the non-moving party, the Court finds no material issue of fact. *Pullman, Inc. v. Phoenix Steel Corp.,* Del.Super., 304 A.2d 334 (1973).

## II. The Insured's Motion for Summary Judgment

Humm seeks summary judgment entitling him to reformation of the insurance contract because the insurer failed to inform him of his option to increase his uninsured/underinsured motorist coverage; the insurer failed to inform him of the additional cost involved in increasing his uninsured/underinsured motorist coverage; and he at no time rejected in writing an offer to increase the uninsured/underinsured coverage.

### A. Insurer's Alleged Failure to Inform Insured of Option to Increase Coverage

An insurer is statutorily obligated to inform an insured of the option to increase uninsured/underinsured coverage to the liability limits of the insured's policy when a policy is being replaced. 18 Del.C. § 3902(b).[1] The policy in effect on the date of the accident differed from the policy immediately prior in that the subsequent policy increased the liability coverage. This modification in the later policy constituted a replacement rather than a renewal; therefore, the insurer had an affirmative duty to offer additional coverage. See, State Farm Mut. Auto Ins. Co. v. Arms, Del.Supr., 477 A.2d 1060, 1064 (1984) (stating, "the plain language of section 3902(b) imposes a duty to offer additional uninsured motorist coverage....").

In addition, an insurer is further obligated to inform an insured of the cost of obtaining uninsured/underinsured coverage. See, Tomasevich v. Nationwide Insurance Co., Del.Super., C.A. No. 87–OC–30, 1992 WL 179225, Del Pesco, J. (July 10, 1992); Morris v. Allstate Insurance Co., Del.Super., C.A. No. 82C–OC–23, 1984 WL 3641, Taylor, J. (July 10, 1984). "The duty imposed by statute on the insurer is to offer the insurance in a way that the insured can make an informed decision. Id. (citing O'Hanlon v. Hartford Accident & Indemnity Co., D.Del., 522 F.Supp. 332 (1981), aff'd, 3rd Cir., 681 F.2d 806 (1982)). And in order for the insured to make a meaningful choice, it is essential that he be informed of the cost of the additional coverage." Bryant v. Federal Kemper Ins. Co., Del.Super., 542 A.2d 347, 351 (1988) (citing Morris v. Allstate Insurance Co., 1984 WL 3641, Slip op. at 2.)

Aetna has stipulated to the fact that no offer was made directly by it to the insured to increase the uninsured/underinsured coverage to the limits of liability nor did it at any time directly inform the insured of the cost of increasing this coverage. Furthermore, Humm has executed an affidavit wherein he states that at no time did Aetna offer to him the opportunity to increase his coverage or provide him with the cost of choosing such an option.

Aetna does, nonetheless, argue that there exists a fact question regarding whether the Humm's received the required information from the agent. Aetna argues that there is direct and documentary evidence, corroborated by the insured's wife, that the offer of uninsured/underinsured coverage was made. The insurer relies on the deposition of the insured's wife, Bernadette Humm, and a confirming letter sent to Mrs. Humm by the Bruce Agency, to support this argument. In the excerpts from Mrs. Humm's deposition that were provided to the Court by the insurer, Mrs. Humm clearly denies receiving an offer for additional insurance. However, the confirming letter sent to Mrs. Humm, upon which the insurer relies, suggests that a discussion of underinsurance coverage took place. There is also evidence of a conversation, after the accident at issue, between Mrs. Humm and Helen Carey, a receptionist at the Bruce Agency, which indicates that Mrs. Humm believed that she had other insurance which would cover the Humms in case of an accident; thus, she may have affirmatively denied increased coverage on that ground.

Aetna further seeks to introduce custom or habit evidence of the Bruce Agency, pursuant to the Delaware Rules of Evidence Rule 406, sufficient to raise a fact question to defeat the insured's motion. The insurer relies on Mr. Bruce's deposition which states that it is his custom and practice to insist that his clients' uninsured/underinsured coverage equal their liability limits, and it was only not done when the clients declined such coverage. In addition, Doris Wills, an underwriter for the Bruce Agency at the time of the accident, stated in her deposition that she did not personally discuss the liability limits

---

1. 18 Del.C. § 3902(b) states as follows:
   Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

of the Humms' policy, but that a customer service representative probably did since it was the "ongoing campaign" in the office to encourage all clients to increase both liabilities on their motorist coverage.

The weight of custom or habit testimony was recently addressed by this Court in the case of *Patilla v. Aetna Life & Casualty Ins. Co. v. The Insurance Market, Inc.*, Del.Super., C.A. No. 91C–01–010, 1993 WL 189473, Lee, J. (April 22, 1993) Mem.Op. ("*Patilla I* "), wherein the Court found that testimony "which obliquely refers to [the] company policy of discussing increases in coverage with all clients fails to be fact-specific as to the communication of an offer to Plaintiffs and, therefore, [is] unpersuasive in illustrating that an offer was made." *Patilla I*, 1993 WL 189473, Mem.Op. at 3. Standing alone, custom or habit testimony is not sufficient to defeat a motion for summary judgment. However, there is circumstantial evidence which creates a factual issue as to whether or not there was an offer of additional insurance.

Therefore, the insurer has met its duty to come forward with sufficient admissible evidence to show the existence of a genuine issue of fact sufficient to defeat the summary judgment motion. *See, E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.*, Del.Super., 229 A.2d 499 (1967).

### B. Insurer's Alleged Failure to Obtain Rejection of Increased Coverage in Writing

Plaintiff next argues that he is entitled to summary judgment regardless of whether there was an offer of additional coverage because the insurer is required to obtain a denial of increased underinsured motorist coverage in *writing* in order to satisfy the statutory requirements of section 3902 completely. Defendant Aetna has stipulated that it does not have in its possession, custody, or control, any rejection in writing from the insured relating to uninsured or underinsured coverage. Furthermore, Humm's affidavit states that at no time did he reject any offer to purchase increased uninsured or underinsured coverage. The insured contends that because he did not reject in writing the increase in coverage as required by 18 *Del.C.* § 3902(a),[2] he is entitled to reformation of his insurance contract.

Aetna argues that the statute in question does not require a written rejection of *under*insured coverage, rather it merely requires *un*insured coverage be rejected in writing.

*Frank v. Horizon Assur. Co.*, Del.Supr., 553 A.2d 1199 (1989), considered whether an insurer can limit, through restrictions or exclusions, the coverage a policyholder has under uninsured motorist coverage. The Court noted that uninsured coverage is not mandatory—as in some states—but must be offered and can be rejected. However, if accepted, it cannot be limited by an "other motor vehicle" (OMV) exclusion. The Court specifically commented that such an exclusion is "incompatible with [section 3902's] affirmative waiver requirement." More significant to the ultimate ruling was the Court's finding that uninsured motorist coverage is personal to the insured, *not* vehicle-related. *Id.* at 1202.

2. 18 *Del.C.* § 3902 provides the following:
   **§ 3902. Uninsured and underinsured vehicle coverage; insolvency of insurer.**
   (a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.
   (1) No such coverage shall be required in or supplemental to a policy when rejected in writing on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.

Following *Frank,* the issue of an OMV exclusion to a policy's underinsured coverage arose in *Holden v. Aetna Casualty & Surety Company,* Del.Supr., 560 A.2d 1023 (1989). Relying on *Frank's* references to the "affirmative waiver requirement," the insurer in *Holden* argued that the exclusion did not violate public policy since underinsurance did not require an affirmative waiver as uninsurance does. The Supreme Court rejected the distinction in the offer of coverage as a basis for finding a difference in the public policy objectives of the two types of coverage. *Holden,* 560 A.2d at 1024. The Court concluded that *"if purchased,* such coverage cannot be eroded by hypertechnical exclusions which lack express statutory authority." *Id.* In sum, *Holden* does not address the issue of whether or not the offer of underinsurance coverage must be rejected in writing. If any inference can be drawn from the decision, it is that such a difference in the insurers duty to offer uninsurance versus underinsurance does exist but has no relevance to the issue at hand.

A review of the applicable statute readily reveals that the obligation to offer and reject in writing relates only to 3902(a), the section directed at uninsured coverage. The second section, 3902(b), relates exclusively to underinsured coverage which *must be offered and does not require a written rejection.* Therefore, there still remains a fact question regarding whether a proper offer of increased uninsured and underinsured coverage was made to the Humms. For that reason, plaintiff Humm's motion for summary judgment is improper and shall be *DENIED.*

## C. Additional Issues Raised in the Papers

Several additional issues, which were raised in late-filed supplemental memoranda and not adequately briefed by the parties, cannot be addressed by this Court at this time. Specifically, in the insured's reply brief, they argue for the first time that the contract should be reformed to reflect a $300,000 policy limit rather than the $200,000 which they claimed in the original complaint. In addition, Aetna argued in a supplemental memorandum to the Court submitted after briefing was completed, that the statute of limitations bars Humm's new claim of $300,000. Finally, the insurer contends that reformation is an equitable remedy and, as such, is not a proper remedy for this Court to afford.

Each of these issues must be addressed in separate motions, scheduled in the normal course.

## III. Third-party defendant's Motion for Summary Judgment

Bruce has also filed a motion for summary judgment in which they refute their duty to indemnify or contribute to Aetna. They argue that Bruce's acts do not alter the risk the insurer was willing to take and, thus, the insurer cannot seek indemnity or contribution from the agent. Bruce argues that at most, Aetna is only entitled to the difference in the premium actually collected and the one which would have been collectible had the issued policy included the added coverage. 43 Am Jur 2d, Insurance § 133; *Patilla v. Aetna Life & Casualty Ins. Co. v. The Insurance Market, Inc.,* Del.Super., C.A. No. 91C–01–010, 1993 WL 390256, Lee J. (Aug. 25, 1993) Mem.Op. at 7–8 ("*Patilla II* ").

Aetna argues in response that Bruce, as Aetna's agent, owed Aetna all of the duties required of an agent to a principal and by failing to adequately memorialize Humm's rejection of coverage, Bruce caused injury to Aetna for which it should be held responsible. Aetna relies on the case of *Miller National Ins. Co. v. Taylor Freeman Ins. Agency,* App., 161 Ariz. 490, 779 P.2d 365 (1989), which found that an agent can be held liable for its failure to comply with applicable statutes.

*Patilla II,* upon which the agent relies, is distinguishable. In *Patilla II,* the Court had previously concluded in its decision in *Patilla I,* that no offer for increased coverage had been made. In addition, the *Miller National Ins.* case, upon which the insurer relies, is distinguishable because in *Miller National Ins.,* the evidence elicited at trial showed that the insureds would not have accepted the increased coverage. *Miller National Ins.,* 779 P.2d at 371.

The determination of the liability of the agent cannot be made until a decision has been reached as to whether a valid offer was made to the insured and whether that offer would have been accepted had it been made. Until these fact questions are resolved, Bruce's motion will not be ripe for adjudication. For that reason, third-party defendant Bruce's motion for summary judgment is **DENIED.**

IT IS SO ORDERED.

SDP/msg

Original to Prothonotary