# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONALD S. HOMA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. NO.: N16C-04-074 AML |
| CLAMENE S. CHALME, and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: November 30, 2017
Decided: January 30, 2018

**Upon Defendant State Farm Mutual Automotive Insurance Company's
Motion for Summary Judgment: Granted**

## <u>MEMORANDUM OPINION</u>

Beverly L. Bove, Esquire, and Vincent J. X. Hedrick, II, Esquire, of BEVERLEY L. BOVE ATTORNEY AT LAW, Wilmington, Delaware, Attorneys for Plaintiff.

Beth H. Christman, Esquire, of CASARIO, CHRISTMAN, SHALK, RANSOM & DOSS, P.A., Wilmington, Delaware, Attorney for State Farm Mutual Automobile Insurance Company.

**LeGrow, J.**

This case arose from a motor vehicle accident involving Plaintiff and the drivers of two other vehicles, one uninsured and one underinsured. Plaintiff's insurer, Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), tendered the uninsured motorist policy limits to satisfy Plaintiff's claims against the uninsured motorist. Plaintiff argues, however, that his claim for underinsured motorist benefits is a separate claim for which State Farm also is liable, notwithstanding the limits in the policy. The question presented by State Farm's motion for summary judgment involves the scope of coverage mandated by Section 3902 of the Delaware Insurance Code. Plaintiff argues Section 3902 requires insurance companies to provide two separate types of coverage: uninsured and underinsured. State Farm argues that under Section 3902, underinsured coverage is part of the additional uninsured coverage that an insured may purchase. I find that Section 3902 includes underinsured motorist coverage within the definition of uninsured coverage and therefore is a single type of coverage against which an insured may make a claim. Because State Farm already tendered the uninsured policy limits for this accident, it is entitled to summary judgment.

**Factual and Procedural Background**

The following facts are drawn from the amended complaint and the record provided by the parties. On March 12, 2015, an unknown red pick-up truck entered defendant Clamene Chalme's driving path and struck the left side of her

1

vehicle as she traveled westbound on Boulden Boulevard. Chalme then negligently drove across three lanes of opposing traffic and struck Plaintiff's vehicle as he traveled southbound on US Route 13. Plaintiff was injured as a result. The driver of the red truck never was identified and Chalme's insurance only provided $15,000 in personal injury coverage. At the time of the accident, Plaintiff held an insurance policy with State Farm. Plaintiff brought suit against Chalme for negligence and against State Farm for uninsured and underinsured benefits under Plaintiff's policy.

Under the terms of Plaintiff's policy, State Farm afforded Plaintiff uninsured motorist coverage up to $100,000 per person in an accident.[1] The policy also stated that uninsured motorist coverage encompassed underinsured motorist coverage.[2] The parties do not dispute that the plain language of Plaintiff's policy limits his uninsured and underinsured coverage to $100,000 per person regardless of the number of vehicles involved in the accident.

Plaintiff nevertheless filed suit for $100,000 in *uninsured* motorist coverage for the unknown red pick-up truck and $100,000 in *underinsured* motorist coverage for Chalme's vehicle. On June 2, 2017, the parties attended mediation and signed a settlement agreement in which Plaintiff received $15,000 from Chalme and $100,000 from State Farm in satisfaction of its uninsured motorist

---

[1] Ex. E to Def.'s Mot. Summ. J. 11.
[2] *Id.* at 12.

benefits. Plaintiff, however, maintained this action to recover an additional $100,000 in underinsured motorist benefits for which State Farm disclaims liability. Defendant State Farm filed a motion for summary judgment.

**The Parties' Contentions**

Plaintiff argues State Farm's policy limits on underinsured benefits is void under 18 *Del. C.* § 3902 because the policy restricts his uninsured/underinsured coverage to $100,000. Plaintiff argues Section 3902 requires insurance companies to provide separate coverage for two separate types of risk. According to Plaintiff, Section 3902(a) protects insureds from an uninsured, or hit-and-run, motorist, while Section 3902(b) protects insureds from underinsured motorists. Under Plaintiff's theory, Defendant Chalme was the underinsured motorist in this case, the unknown pick-up truck was the uninsured motorist, and Section 3902(b) entitles Plaintiff to $200,000 in coverage in connection with the accident on March 12, 2015: $100,000 for each motorist. Plaintiff contends the language in his policy purporting to limit total uninsured and underinsured claims to $100,000 per person, per accident, is contrary to Section 3902 and therefore void.

In response, State Farm argues that, under Section 3902(b), uninsured and underinsured motorist coverage protects insureds against the same risk. Subsection (b), State Farm argues, is designed to allow insureds to expand the scope of their uninsured motorist coverage beyond the statutory minimum provided in

3

subsection (a). State Farm argues subsection (b) does not create coverage separate from subsection (a), but rather expands that coverage to include drivers whose insurance does not cover the extent of the injuries sustained in an accident. Plaintiff's coverage, State Farm contends, was limited to $100,000 in recovery whether the collision resulted from an uninsured motorist, an underinsured motorist, or both. Because Plaintiff received $100,000 in benefits under his uninsured/underinsured coverage, State Farm argues it satisfied the terms of Plaintiff's policy and Section 3902.

**ANALYSIS**

Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[4] The Court will accept "as established all undisputed factual assertions . . . and accept the non-

---

[3] Super. Ct. Civ. R. 56(c).
[4] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[5]

### A. State Farm tendered the policy limits of Plaintiff's uninsured/underinsured coverage and therefore owes no remaining coverage under the policy.

Delaware's Insurance Code dictates that every motor vehicle insurance policy shall provide coverage to protect persons insured thereunder from uninsured or hit-and-run vehicles. Subsection 3902(a) provides:

> No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.[6]

Section 3902 further provides that insured persons may purchase additional uninsured motorist coverage, up to $100,000 per person and $300,000 per accident, and that this additional coverage includes underinsured bodily injury liability coverage. Subsection (b) provides:

> Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death

---

[5] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).
[6] 18 *Del. C.* § 3902(a).

5

up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. ***Such additional insurance shall include underinsured bodily injury liability coverage.***[7]

Therefore, if an insured purchases the additional uninsured coverage under subsection (b), that expanded coverage includes coverage for injuries caused by both uninsured and underinsured motorists.

The conclusion that subsection (b) expands the coverage in subsection (a) is consistent with subsection (b)(1), which states that when an insured accepts subsection (b)'s additional coverage, his uninsured coverage then covers bodily injury suffered due to negligence attributable to the driver of an underinsured vehicle. Subsection (b)(1) therefore affirms that subsection (b) modifies and expands the coverage of subsection (a). Expanding subsection (a)'s coverage does not create a separate claim for insureds; it merely increases the amount of the coverage previously provided and modifies the scope of the coverage to include underinsured motorists.

This interpretation also is consistent with the legislative purpose of Section 3902(b). In *Humm v. Aetna Cas. & Sur. Co.,*[8] the Supreme Court held "[t]he intent of subsection (b) . . . is to assure that the insureds have the right to purchase additional uninsured/underinsured coverage beyond the minimum provided in

---

[7] § 3902(b) (emphasis added).
[8] 656 A.2d 712 (Del. 1995).

6

subsection (a), and assure they are aware of the coverage."[9] This is not a novel interpretation of subsection (b). In *Home Ins. Co. v. Maldonado*,[10] the Delaware Supreme Court expressly held underinsured coverage simply is a form of uninsured coverage:

> [T]he General Assembly intended to equate the statutory provisions controlling uninsured motorist coverage . . . with the statutory provisions governing underinsured motorist coverage. When the Legislature rewrote section 3902 in 1982, it clearly intended to broaden its protective benefits to treat an underinsured tortfeasor's vehicle as an uninsured vehicle. It did so by including underinsured motorist coverage within the definition of uninsured motorist coverage. . . . [U]nderinsured coverage thereby became, by operation of law, simply a form of uninsured coverage when the tortfeasor's coverage is less than the injured claimant's liability insurance limits.[11]

Here, when Plaintiff purchased additional coverage under subsection (b), he expanded the coverage available and mandated by subsection (a). The parties agree Plaintiff's policy limited his uninsured/underinsured motorist coverage to $100,000 per person, per accident regardless of the number of such motorists involved in the accident. That policy limitation, which treats underinsured drivers as a form of uninsured driver, is entirely consistent with Section 3902 and the cases interpreting it.

---

[9] In *Humm*, the Supreme Court sought to clarify that a party had to contract to receive the additional coverage, rather than receiving the coverage by default as subsection (a) provides.
[10] 515 A.2d 690 (Del. 1986).
[11] *Id.* at 696.

State Farm's $100,000 payment to Plaintiff for his personal injury stemming from his collision with Chalme satisfied the terms and conditions of Plaintiff's policy as well as the statutory requirements under Section 3902. By exhausting the limits of his coverage for the uninsured motorist, Plaintiff is barred from continuing to pursue a claim for underinsured motorist benefits related to the same accident.

### B. Plaintiff's interpretation of Section 3902 is based on a misreading of case law.

Plaintiff's reply brief in support of his interpretation of Section 3902 misreads several cases. Plaintiff argues *Humm* holds uninsured and underinsured motorist coverage are two separate and distinct coverages.[12] Although *Humm* does hold subsections (a) and (b) of Section 3902 are governed by different procedures, it does not hold the coverages are distinct in the sense Plaintiff is arguing. In *Humm*, the injured driver argued Section 3902 required subsection (b)'s uninsured/underinsured coverage to be provided to him unless he rejected it in writing.[13] Humm based this argument on the operative language in subsection (a)(1), which states "[n]o such coverage shall be required in or supplemental to a policy when rejected in writing . . . ." Humm argued subsection (b)'s coverage applied automatically in the same way as subsection (a). The Supreme Court

---

[12] Pl.'s Reply Br. to Def.'s Mot. Summ. J. 4.
[13] *Humm v. Aetna Cas. & Sur. Co.*, 656 A.2d 712, 713 (Del. 1995).

rejected this argument, holding that traditional bargaining principles govern subsection (b), thereby requiring additional consideration for the additional coverage.[14] The Supreme Court did not, however, hold that subsections (a) and (b) cover two separate types of risk.

Plaintiff next quotes *Colbert v. Gov't Emp. Ins. Co.*[15] which holds that any reduction of "underinsured motorist coverage to less than what the statute stipulates is void."[16] Plaintiff argues that State Farm's interpretation of Section 3902 seeks to limit the mandated coverage and therefore is void under *Colbert*. Plaintiff cites numerous other cases that hold that any attempt by an insurance provider to reduce coverage mandated by statute is void. Plaintiff's argument, however, begs the question of whether State Farm's interpretation reduces the mandated coverage in the first place. It does not. As stated above, uninsured and underinsured motorist coverage protect against the same type of risk under subsection (b). State Farm paid $100,000 under Plaintiff's uninsured motorist coverage and therefore has not reduced the coverage to less than what Section 3902 requires.

In sum, Plaintiff concedes his injuries resulted from one accident—the chain reaction of the pick-up truck striking Chalme's vehicle, which struck Plaintiff. The

---

[14] *Id.* at 716.
[15] 2010 WL 4226502 (Del. Super. Oct. 25, 2010).
[16] *Id.* at *1.

9

policy, consistent with the statute, limits uninsured/underinsured coverage to $100,000 per person, per accident. Nothing in the statute permits a conclusion that the policy limits apply separately to each uninsured/underinsured motorist or vehicle involved in an accident. Plaintiff therefore has exhausted his coverage.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**.