# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VICTOR A. VERA, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N21C-02-048 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE NORTHERN | ) | |
| INSURANCE COMPANY, a foreign | ) | |
| corporation, | ) | |
| Defendant. | ) | |

Submitted: October 7, 2020
Decided: December 1, 2022

*Upon Defendant Progressive Northern Insurance Company's
Motion for Summary Judgment:*
**GRANTED**.

## OPINION

Gary S. Nitsche, Esquire and Joel H. Fredricks, Esquire (Argued), of NITSCHE & FREDRICKS, LLC, Wilmington, Delaware, Attorneys for Plaintiff.

Daniel P. Bennett, Esquire (Argued), of MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS, LLP, Wilmington, Delaware, Attorney for Defendant.

**Adams, J.**

# INTRODUCTION

This case presents three questions regarding the obligations of automobile insurance companies pursuant to 18 *Del. C.* § 3902: (1) whether § 3902 requires an insurer to make a meaningful offer of uninsured/underinsured motorist coverage (hereinafter "UM/UIM coverage") to an insured who selected the minimum bodily injury ("BI") liability limit; (2) what level of information must be provided to an insured prior to signing a written rejection of UM/UIM coverage;  and (3) whether § 3902 requires an insurer to make a meaningful offer of UM/UIM coverage when the insured has made a material change to the policy and previously rejected said coverage in the original policy.

The Supreme Court of Delaware most recently issued a decision on an insurer's obligations pursuant to § 3902 in *Banaszak v. Progressive Direct Ins. Co.*[1] Since the *Banaszak* decision, a split of authority has developed in the Delaware Superior Court regarding the interpretation of that case.  A broad interpretation of *Banaszak* requires the insurer to provide a meaningful offer to all insureds, regardless of their BI coverage, whereas a narrow interpretation would require the insurer to provide a meaningful offer only to those insureds who purchased BI coverage above the statutory minimum.

---

[1] 3 A.3d 1089 (Del. 2010).

For the reasons discussed herein, as to the first two questions, defendant has established that plaintiff signed a valid written rejection of coverage and that it provided a meaningful offer of such coverage. As to the third question, the Court finds as a matter of law that, pursuant to § 3902(a)(1), plaintiff was required to request UM/UIM coverage in writing when he made a material change to the policy because he signed a valid written waiver of coverage when he purchased the original policy. The plaintiff failed to do so here. Defendant's Motion for Summary Judgment is hereby GRANTED.

## FACTUAL BACKGROUND

### I. Relevant Insurance Documents

On October 8, 2018, Plaintiff Victor A. Vera ("Plaintiff") purchased an automobile insurance policy at McAfee Insurance Agency located in Wilmington, Delaware, with Defendant, Progressive Northern Insurance Company ("Defendant").[2] Plaintiff applied for this policy in person with the assistance of insurance agent, Mariela Alvarado ("Ms. Alvarado"), with whom Plaintiff had dealt with previously at the agency.[3] The policy period ran from October 8, 2018 to April 8, 2019.[4] The policy provided for bodily injury and minimum liability limits of

---

[2] Def. Mot. Summ. J. ¶ 4; Ex. B. to Def. Mot. Summ. J.
[3] Alvarado Aff. ¶ 3, 13.
[4] Ex. A to Alvarado Aff. at 2.

3

$25,000 per person or $50,000 per accident.[5] Plaintiff signed a written rejection of UM/UIM coverage.[6]

During Plaintiff's deposition in January 2022, Plaintiff testified that he purchased this coverage because he was looking for "full coverage that was cheaper than what I was currently paying"[7] and that would cover him if he was to get hit, if he hit somebody, or if he needed a rental car.[8] Defendant submitted evidence of three documents that Ms. Alvarado reviewed with Plaintiff on October 8, 2018: the "Offer of uninsured/underinsured motorist coverage," (the "Offer") the "Delaware Motorist's Protection Act Required Statement to Policyholders" ("Required Statement"), and the "Rejection of uninsured/underinsured motorist coverage" (the "Rejection"). Plaintiff signed the Required Statement and the Rejection.[9]

## II. Changes to Plaintiff's Policy

On December 28, 2018, Plaintiff added a second vehicle to his policy, a 2005 Lincoln Aviator.[10] Plaintiff testified in his deposition that he most likely made this change to his policy via phone call.[11] This change is reflected on the two-page Declarations Page issued by Defendant on December 31, 2018, which coincidentally

---

[5] Ex. A to Alvarado Aff. at 5.
[6] Ex. D. to Def. Mot. Summ. J.
[7] Dep. at 19.
[8] Dep. at 20.
[9] For a detailed discussion of these documents, *see infra* ANALYSIS, Section II.
[10] Dep. at 65.
[11] Dep. at 67.

is the same date on which the underlying accident occurred.[12] Page one of the Declarations Page reflects that Plaintiff added the 2005 Lincoln Aviator and that this change became effective on December 28, 2018.[13] Page two of the Declarations Page reflects that Plaintiff rejected uninsured/underinsured motorist coverage for the 2005 Lincoln Aviator.[14] Exhibit G also contains a two-page written offer of UM/UIM coverage that includes the cost of coverage for both vehicles.[15]

### III. The Underlying Accident

On or about December 31, 2018, Plaintiff was injured in a motor vehicle collision as a result of the negligence of Calvin Anderson. Mr. Anderson's insurance company paid Anderson's policy limits of $25,000, less than the costs of the injuries Plaintiff sustained.

## PROCEDURAL POSTURE

Plaintiff filed this action on February 4, 2021, seeking that the Court declare that Plaintiff has UM/UIM coverage in the amount equal to his BI coverage limits. Defendant initially filed its Motion for Summary Judgment on April 22, 2021, which was withdrawn on June 17, 2021, and filed a second Motion for Summary Judgment on June 1, 2022.

---

[12] Ex. G to Def. Mot. Summ. J. at 2-3; Dep. at 64.
[13] *Id.* at 2.
[14] *Id.* at 3.
[15] *Id.* at 4-5.

On September 23, 2022, the Court heard oral argument in this matter. During oral argument, Plaintiff's counsel raised for the first time that Defendant failed to provide a meaningful offer of UM/UIM coverage, as required by § 3902, after Plaintiff made a material change to the policy on December 28 or thereafter. The Court permitted supplemental briefing on the alleged material change to the policy and whether Defendant offered coverage in response to this change. The parties completed briefing on October 7, 2022.

## STATEMENT OF ISSUES

The broader issue in this case is whether Plaintiff was sufficiently informed about the option to purchase uninsured/underinsured coverage before he signed a written rejection of said coverage and the obligations of the parties, if any, when Plaintiff made a material change to the policy. Resolution of these issues depends on resolving the following questions of fact and law:

1. When an insured has selected the minimum bodily injury liability limits, meaning that the insured's eligibility for uninsured coverage is necessarily limited to the minimum,[16] does § 3902 require the insurance carrier to provide a meaningful offer of the minimum UM/UIM coverage? Also,

---

[16] "Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy." 18 *Del. C.* § 3902(b).

6

does "additional" in § 3902(b) refer to all levels of UM/UIM coverage, or exclusively to UM/UIM coverage above the minimum?

2. Did Defendant provide Plaintiff with sufficient information about UM/UIM coverage before he signed a written rejection of said coverage?

3. If Plaintiff's written rejection of UM/UIM coverage is valid, was Defendant required to make another offer of coverage when Plaintiff made a material change to the policy?

**The Parties' Contentions**

Plaintiff contends that Defendant was obligated to provide him with a meaningful offer of UM/UIM coverage before he signed a written rejection of UM/UIM coverage when he initially purchased the policy. Plaintiff's position is that § 3902(b) and controlling case law require that a meaningful offer be made regarding all UM/UIM coverage, regardless of the level of BI coverage the insured selects.[17] Plaintiff's position is that the word "additional" in § 3902(b) refers to all UM/UIM coverage, including the minimum coverage, because UM/UIM coverage as a whole is optional as opposed to compulsory.[18] Plaintiff further contends that Defendant was required to provide another meaningful offer of UM/UIM coverage when he made a material change to an insurance policy.

_____

[17] *See* Pl. Resp. in Opp. to Def. Mot. Summ. J. ¶ 7, 11.
[18] *Id.* at ¶ 12.

Defendant asserts that there is a significant distinction between the requirements of §§ 3902 (a) & (b) and that only § 3902(a) applies to this case.[19] Defendant argues that § 3902(a) requires that a policy include minimum UM/UIM coverage unless such coverage is rejected in writing by the insured, on a form provided by the insurer, whereas subsection (b) dictates that the insurer need only provide a meaningful offer for levels of UM/UIM coverage above the minimum.[20]

Defendant's position is that the word "additional" in § 3902(b) includes only UM/UIM coverage in excess of the minimum uninsured coverage.[21] Defendant argues that because Plaintiff selected the minimum liability coverage and an insured cannot select uninsured coverage greater than their liability coverage, Defendant was only required to adhere to the standard contained in § 3902(a) regarding a written waiver of minimum uninsured coverage.[22] Finally, Defendant argues that even if the meaningful offer standard applies to this case, Defendant provided a meaningful offer.[23]

---

[19] Def. Mot. Summ. J. ¶ 7.
[20] *Id.* ¶ 6-7.
[21] *Id.* ¶ 7.
[22] *Id.* ¶ 3-6.
[23] *Id.* ¶ 11.

## ANALYSIS

To succeed on a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.[24] "If a defendant, as the moving party, can establish that there is no genuine issue of material fact, and the defendant is entitled to judgment as a matter of law, the burden will shift to the plaintiff to show the existence of specific facts to support the plaintiff's claim."[25] A genuine issue of material fact arises when "any rational trier of fact could infer that plaintiffs have proven the elements of prima facie case by clear and convincing evidence."[26] When considering a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.[27]

### I. Judicial Interpretation of 18 *Del. C.* § 3902

This case is governed by the Delaware Insurance Code, Title 18, § 3902. The most recent decision from the Supreme Court of Delaware interpreting § 3902 is *Banaszak v. Progressive Direct Ins. Co.*, issued in 2010.[28] More recently, a series of Superior Court decisions have interpreted § 3902 and *Banaszak* with conflicting analyses and results. The Court addresses these decisions in turn.

---

[24] Super. Ct. Civ. R. 56(c).
[25] *Singletary v. American Indep. Ins. Co.*, 2011 WL 607017, at *1 (Del. Super. Jan. 31, 2011).
[26] *Id.* (citing *Cerebus Intl. LTD. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1149 (Del. 2002)).
[27] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[28] 3 A.3d 1089, 1094 (Del. 2010).

## A. *Banaszak v. Progressive Direct Ins. Co.*

*Banaszak* involved a plaintiff who purchased bodily injury liability coverage in the amount of $100,000/$300,000, an amount above the minimum mandatory coverage. The plaintiff completed an online application for insurance and later called the defendant insurance agency stating that he was interested in getting a quote and purchasing insurance.[29] The insurance agent pulled up the information from the plaintiff's online application.[30] As part of the insurance agent's review of coverage, the agent stated, "There is no uninsured motorist or uninsured motorist property damage selected," to which the plaintiff responded, "Ok."[31] The agent thereafter mailed the plaintiff a pre-checked form on which "'Uninsured/Underinsured Motorist Bodily Injury' and 'Uninsured Motorist Property Damage' were both marked as 'Rejected.'"[32] The plaintiff signed, dated, and returned this form.[33]

While this policy was in effect, the plaintiff was involved in an accident.[34] The plaintiff's damages exceeded his liability limits and the tortfeasor's minimum amount of coverage; he then filed a declaratory action in the Superior Court seeking

---

[29] *Id.* at 1091.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 1092.
[34] *Id.*

to reform his insurance policy to increase his UM/UIM coverage up to his BI coverage.[35]

The Superior Court held that the defendant did not provide sufficient information about coverage before the plaintiff signed the written waiver of rejection and therefore did not meet the requirements under § 3902(a).[36] The Superior Court ordered that the plaintiff was entitled to reform his UM/UIM coverage, but only up to the minimum coverage available at the time of $15,000/$30,000.[37]

On appeal, the Supreme Court affirmed in part and reversed in part.[38] The court affirmed in part the grant of summary judgment on the plaintiff's uninsured claim, reversed the decision denying reformation beyond the minimum uninsured coverage, and remanded with instructions to reform the policy to match the plaintiff's BI coverage.[39]

## B. The Supreme Court's Analysis of § 3902

The Supreme Court began its discussion in *Banaszak* by reasoning that "the analysis of this case highlights the differences between §§ 3902(a) and (b), and hinges on which subsection applies." The court held that "[t]he purpose of § 3902(a) is to ensure that any individual that does not expressly reject uninsured coverage will

---

[35] *Id.* at 1092.
[36] *Banaszak v. Progressive Direct Ins. Co.,* 2009 WL 2580317, at *7-8 (Del. Super. Aug. 17, 2009).
[37] *Id.* at *9.
[38] 3 A.3d at 1091.
[39] *Id.* at 1095.

'be assured of the same minimum pool of resources from which to seek compensation' from an uninsured motorist as he would have from a motorist with the state's minimum insurance coverage"[40] whereas § 3902(b) functions as "a disclosure mechanism [that] promote[s] informed decisions on automobile insurance about coverage."[41]

According to the Supreme Court, "[a] plain reading of the two subsections mandates that an insurer must (1) not deliver any insurance policy without the minimum uninsured coverage, unless rejected by the insured in writing; and must (2) make a meaningful offer supplying the insured with supplemental uninsured/underinsured coverage up to the limits of an insured's bodily injury liability insurance."[42] The Supreme Court further reasoned that, although § 3902(a)(1) might suggest an initial rejection of uninsured coverage relieves the insurer from making a later offer of underinsured coverage pursuant to § 3902(b), "nothing in the statute suggests that §§ 3902(a) and 3902(b) are dependent on one another or that one subsection is a prerequisite for the other."[43]

After interpreting § 3902, the Supreme Court held that the offer form that was filled out by defendant's agent, even if ultimately signed and dated and returned by

---

[40] *Id.* at 1094 (quoting *Humm v. Aetna Cas. and Sur. Co.,* 656 A.2d 712, 716 (Del. 1995)).
[41] *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1064 (Del. 1984)).
[42] *Id.*
[43] *Id.* As support for this assertion, the Supreme Court then quotes the following from *Humm v. Aetna Cas. and Sur. Co.*: "The Courts may not engraft upon a statute language which has been clearly excluded therefrom by the legislature." *Id.* at 1094, n.8 (quoting *Humm*, 656 A.2d at 715).

the insured, "failed to embody" the standards of § 3902, which was "to ensure that consumers are able to make an informed decision" concerning the amount of UM/UIM coverage.[44]  The Supreme Court held that a meaningful offer of UM/UIM coverage means that "the insured must know all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination."[45]   Without the plaintiff's understanding of "what uninsured or underinsured motorist coverage entails, [he] did not have all of the pertinent facts and could not make an informed decision on automobile insurance coverage."[46]   The Supreme Court reformed the plaintiff's policy to increase the underinsured coverage to $100,000 in order to match the BI liability limits.[47]

### C. The Superior Court's Interpretation of *Banaszak*

The Superior Court has addressed *Banaszak* in several reformation decisions.[48]   It is important to note that no decision addressing or implicating *Banaszak* has its distinct combination of facts: an insured who had purchased BI coverage above the minimum,[49] who was therefore eligible to purchase UM/UIM

---

[44] *Id.* at 1094-95.
[45] *Id.* at 1095.
[46] *Id.*
[47] *Id.*
[48] *See infra* at n. 52-53, 56 and accompanying text.
[49] *Banaszak*, 3 A.3d at 1092-93.

coverage above the minimum,[50] and who rejected in writing this option of coverage.[51]

There is a split of authority within the Superior Court regarding the correct interpretation of *Banaszak*. The Superior Court is divided on whether *Banaszak* applies exclusively to cases where the insured purchased BI coverage in excess of the minimum ("the narrow interpretation") or whether it applies broadly to include cases where the insured has purchased the minimum BI coverage ("the broad interpretation").[52] These two interpretations diverge over whether the word "additional" in § 3902(b) includes all levels of UM/UIM coverage or only coverage that is in excess of the minimum UM/UIM coverage.[53]

---

[50] "Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy." 18 *Del. C.* 3902(b).

[51] *Banaszak*, 3 A.3d at 1092.

[52] *See infra* at ANALYSIS, Section I.C.3 for a discussion of the following cases: *Singletary v. American Indep. Ins. Co.*, 2011 WL 607017 (Del. Super. Jan. 31, 2011); *Brezial-Williams v. Progressive N. Ins. Co.,* C.A. No. N21C-01-143 (MMJ) (Del. Super. June 14, 2021); *Heasley v. Allstate Prop. and Cas. Ins. Co.,* 2022 WL 951261 (Del. Super. Mar. 28, 2022); *Campbell v. Permanent Gen. Assurance. Corp.*, 2022 WL 2663229 (Del. Super. July 6, 2022).

[53] At least one Superior Court decision has postulated how the Supreme Court would decide the issue. *See Brezial-Williams v. Progressive N. Ins. Co.,* C.A. No. N21C-01-143 (MMJ) (Del. Super. June 14, 2021) (TRANSCRIPT at 25). In *Brezial-Williams,* the Delaware Superior Court denied the defendant's Motion for Summary Judgment where the plaintiff had rejected UM coverage in writing and had purchased minimum BI coverage, finding that there were genuine issues of material fact. *Id.* at 4-5, 26. The court reasoned that, "if you read the actual holding of *Banaszak*, I think you can find that the issue before this court right now was not decided by the Supreme Court in that decision." *Id.* at 25.

Given that the Supreme Court has not issued a decision since *Banaszak* that might have shaped the contours of that decision and because the Superior Court has not been presented with a case matching the factual scenario in *Banaszak*, this Court has limited guidance on how broadly *Banaszak* is to be applied. The Court here provides a narrow and broad interpretation of *Banaszak* and for the reasons discussed below, adopts the narrow interpretation.

### 1. The narrow interpretation of *Banaszak*

The narrow interpretation of *Banaszak* is derived from the text of that opinion and is limited by its unique set of facts. Under the narrow interpretation, in the case of an insured who has purchased BI coverage above the minimum, an insurer remains obligated to provide a meaningful offer of UM/UIM coverage above the minimum even when the insured has initially rejected the minimum UM/UIM coverage. Under this interpretation, the insurer cannot avoid the requirement in § 3902(b) by simply obtaining a written rejection of minimum UM/UIM coverage without providing any information on said coverage and the court cannot limit its analysis to § 3902(a). Section 3902(a) is not a prerequisite to § 3902(b); to the contrary, the two subsections are to be read together and are not dependent on each other.[54] Thus, an insurer need only comply with § 3902(b) if the insured has selected BI coverage above the minimum.

---

[54] *Id.* at 1094.

This Court finds that the holding in *Banaszak* was a direct result of the fact that the plaintiff had purchased BI coverage above the minimum. The Supreme Court in *Banaszak* affirmed in part the Superior Court's decision granting the plaintiff summary judgment with respect to § 3902(a), but reversed the trial court's holding that § 3902(b) was inapplicable.[55] A narrow interpretation infers that if the Supreme Court had instead been presented with an appeal from a plaintiff who selected the minimum BI coverage and rejected such coverage in writing, the Supreme Court would have only evaluated the validity of the written rejection under § 3902(a) and not whether the insurer provided a meaningful offer.[56]

Under a narrow interpretation, the word "additional" in § 3902(b) and as discussed in *Banaszak* refers exclusively to UM/UIM coverage above the minimum and does not encompass minimum UM/UIM coverage.[57] The argument follows that the meaningful offer requirement is limited to those who are eligible to purchase it by virtue of their excess BI coverage.

The first sentence of the discussion in *Banaszak* lends support to the narrow interpretation: "the analysis of this case highlights the differences between §§ 3902(a) and (b), and hinges on which subsection applies."[58] This line suggests that

---

[55] *Id.* at 1095.
[56] *See id.*
[57] *See generally id.*
[58] *Id.* at 1093.

the Supreme Court contemplated that cases involving written rejections of UM/UIM coverage could fall into two categories: one where the analysis would be limited to § 3902(a) and one where the analysis would include both §§ 3902(a) and (b).[59] If the Supreme Court meant for §§ 3902(a) and (b) to apply to both categories of written rejection cases—minimum BI coverage cases and above minimum BI coverage cases—the second clause of the aforementioned quote would be superfluous.

While *Banaszak* does not expressly state that the purpose of § 3902(b) is reserved for insureds who select BI coverage above the minimum, it cites to three cases that do define "additional" as UM/UIM coverage above the statutory minimum, including the two seminal reformation cases, *State Farm Mut. Auto. Ins.*

---

[59] The Court notes that the law is well-settled with respect to reformation cases involving insureds with BI coverage above the minimum and who also purchased at least the minimum UM/UIM coverage. The court in such cases looks to whether a meaningful offer was made pursuant to §3902(b). *See*, *e.g., Morris v. Allstate Ins. Co*., 1984 WL 3641, at *1 (Del. Super. July 10, 1984); *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1064 (Del. 1984); *Mason v. United Serv. Auto. Ass'n*., 697 A.2d 388, 390 (Del. 1997); *Drenth v. Colonial Penn. Ins. Co*., 1997 WL 720459, at *1-2 (Del. Super. Sept. 15, 1997); *Knapp v. United Serv. Auto. Ass'n*, 1997 WL 719340, at *1-2 (Del. Super. Sept. 12, 1997) *rev'd on other grounds*; *Shukitt v. United Serv. Auto. Ass'n*., 2003 WL 22048222, at *1 (Del. Super. Aug. 13, 2003); *Brintzenhoff v. Hartford Underwriters Ins. Co*., 2004 WL 2191184, at *1 (Del. Super. Aug. 11, 2004); *Garey v. Hartford Underwriters Ins. Co.*, 2011 WL 5299679, at *1 (Del. Super. Oct. 31, 2011); *Cooper v. Hartford Ins. Co*., 2008 WL 4174761, at * 1 (Del. Super. Mar. 31, 2008); *Hodges v. Hartford Underwriters Ins. Co*., 2008 WL 4152687, at *1 (Del. Super. Aug. 29, 2008); *Boettner v. Liberty Mut. Fire Ins. Co*., 2010 WL 1266830, at *1 (Del. Super. Mar. 31, 2010); *Spivey v. USAA Cas. Ins. Co.*, 2017 WL 3500402, at *2-3 (Del. Super. Aug. 15, 2017), *aff'd*, 184 A.3d 1289 (Del. 2018); *Radulski v. Liberty Mut. Fire Ins. Co*., 2020 WL 8676027, at *2-3, 5 (Del. Super. Feb. 26, 2021).

*Co. v. Arms* and *Humm v. Aetna Cas. and Sur. Co.*[60] Though not cited by the Supreme Court in *Banaszak*, the Superior Court in *Shukitt v. United Serv. Auto. Ass'n*[61] also reasons that "[t]he statute's purpose is to ensure that responsible Delaware drivers—i.e. drivers who maintain responsible limits of liability coverage—can avail themselves of equal UM/UIM coverage in the event they encounter less responsible tortfeasors." Moreover, *Garey v. Hartford Underwriters Ins. Co.,* issued in 2011 shortly after *Banaszak*, states that "[t]he purpose of the statute is to allow individuals who carry liability coverage in excess of the minimum

---

[60] *See Banaszak*, 3 A.3d at 1095 (citing *Arms,* 477 A.2d at 1063-64. "In sum, the statutory scheme mandates a *floor of 10/20* uninsured motorist coverage unless rejected in writing. The law also mandates that every insurer offer *additional uninsured motorist coverage up to a ceiling* of the lesser of $300,000 or the particular policy's personal injury limits.") (emphasis added); *Morris*, 1984 WL 3641, at *1 ("An objective of § 3902(b) is to give to those who carry liability coverage in excess of the minimum statutory amount the full opportunity to carry uninsured (and now underinsured) coverage in an equal amount"); and *Humm v. Aetna Cas. and Sur. Co.,* 656 A.2d 712, 714 (Del. 1995) ("the separate duties imposed on the insurance carrier in the two subsections are dependent on the amount of coverage involved."). *Sammarco v. USAA Cas. Ins. Co.,*878 A.2d 457, 460 (Del. 2005), and *Hudson v. Colonial Penn. Ins. Co.,*1993 WL 331168, at *5 (Del. Super. July 21, 1993) also find that "additional" in § 3902(b) refers exclusively to UM/UIM coverage above the statutory minimum. "[T]he focus of section 3902(b) is to make *additional* UM/UIM coverage available *above the basic minimum uninsured coverage.*" *Sammarco,* 878 A.2d at 460 (emphasis added). In *Hudson,* the court reasoned that unlike § 3902(a) which requires a written rejection of minimum coverage, "the legislature did not require this procedure for an offer to the insured for *additional* uninsured/underinsured motorist coverage under § 3902(b)." 1993 WL 331168, at *5. The court's definition of "additional" in *Arms*, 477 A.2d at 1061; *Humm*, 656 A.2d at 714; *Morris*, 1984 WL 3641, at *1; *Sammarco*, 878 A.2d at 460; *Hudson*, 1993 WL 331168, at *1, 5; *Garey*, 2011 WL 5299679, at *1, 3; and *Shukitt*, 2003 WL 22048222, at *1, 3 (quoting *Morris*, 1984 WL 3641, at *1), was made in the context of insureds who had BI coverage above the minimum and had at least the minimum UM/UIM coverage.
[61] 2003 WL 22048222, at *3.

18

statutory amount an opportunity to carry equal uninsured and underinsured coverage."[62]

## 2. The broad interpretation of *Banaszak*

Under a broad interpretation of *Banaszak*, an insurer must comply with § 3902(b) regardless of the level of BI coverage purchased by the insured. In the broad interpretation, the word "additional" in § 3902(b) refers to UM/UIM coverage as a whole, including the lowest level of coverage. The Supreme Court in *Banaszak* stated that a policy must include minimum uninsured coverage unless rejected in writing *and* must make a meaningful offer of "supplemental UM/UIM coverage up to the limits of an insured's bodily injury liability insurance." Applying the more expansive definition of "additional" to the text in *Banaszak* results in a requirement that the insurer provide a meaningful offer of UM/UIM coverage to all insureds when they initially apply, including insured's who have selected minimum BI coverage.

The broad interpretation finds support from the legislative intent and public policy considerations. The legislature intended that consumers be able to make informed decisions about coverage.[63] The purpose behind the statute is "to permit an insured to protect himself from an irresponsible driver causing injury or death.

---

[62] 2011 WL 5299679, at *3 (Del. Super. Oct. 31, 2004).
[63] *Banaszak*, 3 A.3d at 1095.

This public policy is achieved by making available coverage that mirrors [one's] liability insurance through the purchase of uninsured motorist coverage. Again, this policy goal is not advanced by restricting, in the policy providing the insurance, the class of persons to be protected."[64] Under the broad interpretation, insurers should provide a meaningful offer to all insureds including those who select the minimum uninsured motorist coverage.

### 3. Relevant case law issued after *Banaszak*

The Court is aware of three decisions issued by the Delaware Superior Court after *Banaszak* that address the obligations of an insurer to an insured who has purchased minimum BI coverage and rejected UM/UIM coverage.[65] These three cases take varied positions on whether both §§ 3902(a) and (b) apply. Two of these decisions— *Singletary v. American Dep't. Ins. Co.* and *Heasley v. Allstate Prop. and Cas. Ins. Co.* — were made in the context of a material change to the original policy

---

[64] *Frank v. Horizon Assurance Co.*, 553 A.2d 1199, 1205 (Del. 1989) (citing *Home Ins. Co. v. Maldonado,* 515 A.2d 690 (Del. 1986).

[65] *Singletary v. American Indep. Ins. Co.*, 2011 WL 607017, at *1 (Del. Super. Jan. 31, 2011); *Heasley v. Allstate Prop. and Cas. Ins. Co.,* 2022 WL 951261, at 1, n. 5 (Del. Super. Mar. 28, 2022); *Campbell v. Permanent Gen. Assurance. Corp.*, 2022 WL 2663229, at *1 (Del. Super. July 6, 2022) (*see* Ex. A to Def. Mot. Summ. J., ¶ 1, listing the plaintiff's BI limit of $25,000/$50,000). In *Brezial-Williams v. Progressive N. Ins. Co.*, the Superior Court denied defendant's motion for summary judgment, finding that the Supreme Court would most likely find that a meaningful offer is required for § 3902(a), even when only the minimum BI limits are selected. C.A. No. N21C-01-143 (MMJ) (Del. Super. June 14, 2021) (TRANSCRIPT at 25-26). *Brezial-Williams* is pending trial and is discussed in more detailed *infra* at ANALYSIS, Section I.C.3.

and discuss *Banaszak* in their analyses. The third case, *Campbell v. Permanent Gen. Assurance Corp.*, does not involve a material change and does not cite to *Banaszak*.[66]

*Singletary*, issued in 2011, involved a plaintiff who sought to reform her policy to include minimum UM/UIM coverage after she suffered an accident with an uninsured motorist.[67] The plaintiff in *Singletary* purchased minimum BI coverage and rejected UM/UIM coverage when she initially purchased the policy.[68] The plaintiff rejected in writing UM/UIM coverage a second time after making a material change to the policy.[69] The parties stipulated that defendant provided the plaintiff with a "form describing the nature of UM/UIM coverage" when she initially purchased the policy and that the first written rejection was valid, but disagreed that the insurer made a sufficient offer of coverage when the insured made a material change to the policy.[70] The court ultimately held that the defendant provided the plaintiff with sufficient information of UM/UIM coverage when she made a material change to the policy.[71]

The court did not make clear whether it conducted an analysis under § 3902(a) only, or an analysis under both §§ 3902(a) and (b). On the one hand, the court stated in its introductory paragraph that the issue was whether defendant provided

---

[66] *See generally, Campbell,* 2022 WL 2663229.
[67] 2011 WL 607017, at *1.
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.* at *3-4.

sufficient notice pursuant to §§ 3902(a) and (b),[72] and held in its concluding paragraph that defendant had done so.[73] The court includes direct quotes from *Banaszak* which discussed the requirements of §§ 3902(a) and (b).[74] On the other hand, the court's framing of the question and its reasoning is strongly indicative of a § 3902(a) analysis. The court stated in the facts section that "[t]he question is whether . . . [defendant] sufficiently re-offered [plaintiff] UM/UIM coverage, in accordance with 18 *Del. C.* § 3902(a)"[75] and asserted in the concluding paragraph that the central issue was whether the defendant complied with § 3902(a).[76] The court reasoned that the legislative intent of § 3902(a) resolved the analysis and stated that the plaintiff expressly rejected the first and second offer of UM/UIM coverage.[77]

The court concluded that *Banaszak* was inapposite because *Singletary* involved a valid original offer and rejection followed by a less detailed offer.[78] The plaintiff made no claim that she was somehow deprived of the knowledge that she was originally given in the first offer and the court found that the second less detailed

---

[72] *Id.* at *1.
[73] *Id.* at *4.
[74] *Id.* at *2.
[75] *Id.* at *1.
[76] *Id.* at *4.
[77] *Id.* at *3. "[T]he purpose of § 3902(a) is to ensure that any individual who does not expressly reject uninsured coverage will 'be assured of the same minimum pool of resources from which to seek compensation' from an uninsured motorist as he would have from a motorist with the state's minimum insurance coverage." *Id.* (quoting *Humm v. Aetna Cas. and Sur. Co.*, 656 A.2d 712, 716 (Del. 1995).
[78] *Id.*

offer was therefore valid.[79]  The court did not address whether the plaintiff was required pursuant § 3902(a)(1) to affirmatively request UM/UIM coverage in writing after she had originally rejected it.[80]

*Heasley*, issued in 2022, involved a similar plaintiff who had purchased minimum BI coverage, had rejected UM/UIM coverage in writing when he originally purchased the policy, and claimed that the defendant did not provide him with a meaningful offer of UM/UIM coverage when he made a material change to his policy.[81]  The distinction between the *Singletary* and *Heasley* plaintiffs is that the latter neither accepted nor rejected UM/UIM coverage when he made a material change.[82]  The defendant sent the UM/UIM form to the plaintiff after he reported the accident.[83]  The court only conducted a § 3902(a) analysis and held that, pursuant to § 3902(a)(1), the plaintiff was required to affirmatively request UM/UIM coverage in writing since he had previously signed a written rejection of coverage.[84]  The court reasoned that "[u]nlike *Mason*,[85] there is no requirement to offer additional coverage

---

[79] *Id.* at *3-4.

[80] "No such coverage shall be required in or supplemental to a policy when rejected in writing . . . or upon any . . . amendment, alteration, modification . . . unless the coverage is then requested in writing by the named insured." 18 *Del. C.* 3902(a)(1).

[81] 2022 WL 951261, at *1-2, n. 5, (Del. Super. Mar. 28, 2022).

[82] *Id.* at *1.

[83] *Id.*

[84] *Id.* at *2-4.

[85] The underlying facts in *Mason v. United Serv. Auto. Ass'n.* involve the plaintiff, Katherine Howerton, and mother of Thomas Mason, the co-plaintiff, who purchased minimum UM/UIM coverage in the original policy and filed a declaratory action to reform her and her son's coverage in an amount equal to their BI coverage.  697 A.2d 388, 390-91 (Del. 1997).  Ms. Howerton

23

under §3902(b) where Plaintiff previously waived his UM/UIM coverage. No consideration can be made regarding an offer of additional coverage when the initial coverage has been waived."[86] The court reasoned that *Banaszak* was inapplicable to this case because *Banaszak* it related to the insurance company's failure to offer *underinsured* motorist coverage under § 3902(b).[87]

*Campbell v. Permanent Gen. Assurance Corp.*, issued in 2022, involved a plaintiff similar to the plaintiffs in *Singletary* and *Heasley* who purchased minimum BI coverage and claimed that the defendant did not provide her with a meaningful offer of UM/UIM coverage before she signed a written rejection.[88] The court conducted an analysis under §§ 3902(a) and (b) and found that the defendant complied with subsection (a) but not subsection (b).[89] The court held that the

---

claimed that she was not provided with a meaningful offer of additional coverage when she made a material change to the policy. *Id.* at 391. The Supreme Court in *Mason* reversed the Superior Court's denial of summary judgment to the plaintiffs and grant of summary judgment to the defendant, holding that defendant failed to provide Ms. Howerton with a meaningful offer of additional coverage. *Id.* at 394. The court held that the elements of a meaningful offer are: "(1) an explanation of the cost of the coverage, and (2) a communication that clearly offers the specific coverage in the same manner and with the same emphasis as was on the insured's other coverage." *Id.* at 393.

[86] *Heasley*, 2022 WL 951261, at *3.

[87] *Id.* at *4.

[88] 2022 WL 2663229, at *3 (Del. Super. July 6, 2022) (*see* Ex. A to Def. Mot. Summ. J., indicating that the plaintiff purchased the minimum BI coverage of $25,000/$50,000).

[89] *Id.* at *2-3.

defendant failed to make a meaningful offer of coverage because the Form A containing the offer did not include the costs of coverage.[90]

This Court is aware of an increase in pending reformation cases that involve insureds who have purchased the minimum BI coverage and rejected UM/UIM coverage in writing.[91]   *Brezial-Williams v. Progressive N. Ins. Co.* is one such pending case, which is set for trial in March 2023.  In *Brezial-Williams,* the court denied the defendant's motion for summary judgment, and held in a transcript ruling that that there were genuine issues of material fact, including whether defendant provided sufficient information about the cost of UM/UIM coverage.[92]  The court denied the motion in part because it was "likely that the Supreme Court would not decide that the meaningful offer requirement would not apply to § 3902(a) in that it is unlikely that the Supreme Court would find that the insured need not be informed

---

[90] 2022 WL 2663229, at *3.  Although the court in *Campbell* cites to *Brintzenhoff v. Hartford Underwriters Ins. Co.*, 2004 WL 2191184, at *1 (Del. Super. June 4, 2004) and *Shukitt v. United Serv. Auto. Ass'n,* 2003 WL 22048222, at *3 (Del. Super. Aug. 13, 3003) for the three-part rule defining a meaningful offer, this rule was originally issued by the Supreme Court in *Mason,* 697 A.2d at 393; *see supra* n. 85.  Notably, unlike the plaintiff in *Campbell*, *Mason* involved a plaintiff who purchased BI coverage above the minimum and UM/UIM coverage below his BI limit. *Id.* at 390. Similarly, *Brintzenhoff* and *Shukitt* also involved plaintiffs who purchased BI coverage above the minimum and minimum UM/UIM coverage. 2004 WL 2191184, at *1; 2003 WL 22048222, at *1.

[91] *See*, *e.g.*, *Brezial-Williams,* C.A. No. N21C-01-143 (MMJ) (Del. Super. June 14, 2021); *Moon v. Permanent. Gen. Assurance. Co.*, C.A. No. N21C-01-202 (MMJ); *Shockley v. LM Gen. Ins. Co.*, C.A. No. N21C-01-217 (MMJ); *Harris v. State Farm Fire & Cas. Co.*, C.A. No. N22C-01-120 (AML).

[92] *Brezial-Williams,* C.A. No. N21C-01-143 (MMJ) (June 14, 2021) (TRANSCRIPT at 26, 27).

25

of the cost of the lowest basic uninsured motorist coverage in order for a written waiver to be valid."[93]

## II. Defendant provided sufficient information of UM/UIM coverage to constitute a valid written waiver and a meaningful offer

After an exhaustive review of the case law of the case law since *Banaszak*, the Court finds greater support for the narrow interpretation of *Banaszak* and adopts it here. The Court finds that the word "additional" in § 3902(b) and as used in the case law refers exclusively to UM/UIM coverage in excess of the minimum.[94] The Court further finds that the holding in *Banaszak* was a result of its unusual set of facts and should not be broadly applied to cases involving insureds who, in contrast, have purchased minimum BI coverage and who rejected UM/UIM coverage in writing. Even if the Court were to apply the broad interpretation, this would not change the outcome. Defendant has established that there is no genuine issue of material fact that the written rejection is valid under § 3902(a) and that Defendant provided a meaningful offer of UM/UIM coverage under § 3902(b) on October 8, 2018.

---

[93] *Id.* at 26.

[94] Adopting this interpretation would not frustrate the legislative intent because such interpretation would still ensure that drivers "can avail themselves of equal UM/UIM coverage in the event they encounter less responsible tortfeasors." *Shukitt*, 2003 WL 22048222, at *3.

## A. "Offer of Uninsured/Underinsured Motorist Coverage"

Exhibit A to Ms. Alvarado's Affidavit includes the one-page Offer of uninsured/underinsured motorist coverage that states, in relevant part:

> Delaware law requires that your motor vehicle insurance policy provide Uninsured Motorist coverage for bodily injury or death with minimum limits of $25,000 each person/$50,000 each accident [ . . .] unless you reject these minimum limits in writing. We are offering you Uninsured Motorist coverage up to the limits selected for your Liability coverage.

The Offer lists the premium, explains that this premium is based on Plaintiff's current liability coverage limits, and that other uninsured/underinsured coverage limits may be available if Plaintiff changed his liability coverage limits.[95] This document states that Plaintiff indicated on the Required Statement that he wanted to reject this coverage and instructed him to sign that form if he wanted to reject it.[96] It further instructs Plaintiff to sign and date the Rejection[97] to confirm his waiver of coverage that is indicated on the Required Statement.[98] Finally, the Offer provides an explanation of the nature and scope of uninsured/underinsured motorist coverage.[99]

---

[95] Ex. A to Alvarado Aff. at 10.
[96] *Id.*
[97] Ex. D. to Def. Mot. Summ. J.
[98] Ex. A to Alvarado Aff. at 10.
[99] *Id.*

## B. "The Required Statement"

Contained in Defendant's Exhibit C is the three-page Required Statement. Page two of this document contains a table listing the different types of coverage offered:[100]

| A. Coverages | B. Options | C. Selection          Vehicle     1 |
|---|---|---|
| 1. Bodily Injury Liability (Compulsory) | I want limits as shown in Column C | Bodily Injury limits $25,000 each person/$50,000 each accident |
| 2. Property Damage Liability (Compulsory) | I want limits as shown in Column C | Property Damage limits $10,000 each accident |
| 3. No Fault (PIP) (Compulsory*) | I want Additional limits as shown in Column C | Personal Injury Protection limits $15,000 each person/$30,000 each accident<br><br>Deductible applicable to named insured & household members<br>☐ $0            Premium $381.00<br>☐ $250        Premium $373.00<br>☐ $500        Premium $370.00<br>☐ $1,000    Premium $309.00<br>☒ $2,000    Premium $278.00 |
| PPC (Compulsory*) | I want Additional limits as shown in Column C | Property Protection Limits each accident $10,000 |
| 4. Physical Damage | I want | 1. Collision coverage with a deductible of ☐<br>    To reject this coverage entirely ☒<br>2. Comprehensive coverage with a deductible of ☐<br>    To reject this coverage entirely ☒ |
| 5. Rental Reimbursement (Optional) | I want | Yes ☐          No ☒<br><br>Rental reimbursement selected by insured. |
| 6. Additional Custom Parts or Equipment (value in excess of $1,000) | I want | Yes ☐          No ☒<br>Value |
| 7. Roadside | I want | Yes ☒          No ☐ |
| 8. Loan/Lease Payoff | I want | Yes ☐          No ☒ |
| 9. Uninsured/ Underinsured vehicle coverage** (Optional) (Available in limits up to the Bodily Injury Liability limits or $250,000/$500,000 or $500,000 CSL whichever is less) | I want<br>1. Minimum limits ☐ $25,000/$50,000 and Property Damage $10,000<br>2. Bodily Injury Liability policy limit ☐<br>3. Other – Specify in Column C ☐<br>4. To reject this coverage entirely ☒ | Limits<br><br><br>Property Damage |

[100] Ex. C. to Def. Mot. Summ. J.

28

Row 9, column B, provides four options for "Uninsured/Underinsured vehicle coverage": 1) the minimum limit of $25,000/$50,000; 2) the bodily injury liability policy limit, which is listed in Row 1, Column C ($25,000/$50,000); 3) Other; and 4) "I want to reject this coverage entirely."[101] The box next to option four is checked.[102] Plaintiff electronically signed Page three of this document with a date of October 8, 2018, as did Ms. Alvarado.[103]

On the signature page to the Required Statement is an explanation of uninsured/underinsured motorist coverage which states the nature of the coverage, that such coverage is not mandatory, and that it is required to be offered.[104] Plaintiff testified in his deposition that he recalled this page in particular and agreed that the first paragraph of that page explained that UM/UIM coverage is not mandatory, but is required that it be offered.[105] Plaintiff also testified that it was his electronic signature on Page three and that he placed his signature on the document via electronic SIMpad.[106] Plaintiff, however, did not read the paragraph above the signature line which stated that he understood that his selection of uninsured/underinsured coverage is applicable to the policy on the vehicle described

---

[101] *Id.*
[102] *Id.*
[103] *Id.* at 3.
[104] *Id.*
[105] Dep. at 27.
[106] Dep. at 27-28.

and on all future renewals or on future policies issued because of a change in vehicle, unless he subsequently requested such coverage in writing.[107]

## C. "The Rejection of Uninsured/Underinsured Motorist Coverage"

Defendant's Exhibit D contains a one-page document titled "Rejection of Uninsured/Underinsured Motorist Coverage," which essentially functions as a confirmation of Plaintiff's understanding that he was offered uninsured/underinsured motorist coverage, that he rejected the option to purchase same, and that he understood what this coverage could protect against. It also provided a detailed description of the nature of coverage.[108] Plaintiff signed and dated this document.[109] The Court finds that these three documents taken together, in addition to evidence that the insurance agent explained the nature and cost of coverage to Plaintiff in person, are sufficient to constitute a valid written waiver and meaningful offer. With respect to the written waiver, for rejection to be valid, it must be rejected on "a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected."[110] Plaintiff electronically signed the Required Statement, dated October 8, 2018, immediately below a short paragraph reiterating his understanding that his policy would reflect the options chosen on this

---

[107] Dep. at 29.
[108] Ex. D. to Def. Mot. Summ. J.
[109] *Id.*
[110] 18 *Del. C.* § 3902(a)(1).

30

form. Plaintiff indicated that he was rejecting this coverage entirely. Plaintiff also signed the Rejection of Uninsured/Underinsured Motorist Coverage, confirming that he was offered coverage, his understanding of the nature of coverage, and that he was rejecting coverage. Plaintiff further signed the one-page document titled Rejection of Uninsured/Underinsured Motorist Coverage confirming that he was offered coverage, his understanding of the nature of coverage, and that he was rejecting coverage.[111] Following *Johnson v. AIG Ins. Co.*[112] and *Heasley*,[113] this Court finds that these two signed documents taken together are more than sufficient to constitute a valid waiver.

With respect to a meaningful offer, even if the Court applied the broader interpretation of *Banaszak,* Plaintiff was put on notice of "[a]ll of the facts reasonably necessary for him to be adequately informed to make a rational, knowledgeable, and meaningful determination."[114] The three documents discussed above make an unequivocal affirmative offer of coverage, explain that minimum coverage is required unless rejected in writing, and include the cost of coverage.

---

[111] *Id.*
[112] 2004 WL 1732211, at *1 (Del. Super. July 26, 2004).
[113] 2022 WL 951261, at *3 (Del. Super. Mar. 28, 2022).
[114] *Banaszak v. Progressive Direct Ins. Co.*, 3 A.3d 1089, 1095 (Del. 2010) (quoting *Morris v. Allstate Ins. Co*., 1984 WL 3641, at *1 (Del. Super. July 10, 1984)).

Unlike *Mason*,[115] *Shukitt*,[116] and *Knapp*,[117] where the text of the policy did not clearly state that an offer of uninsured/underinsured coverage was being made, here, the title–"Offer of Uninsured/Underinsured Motorist Coverage"–and substance unambiguously and affirmatively provides an offer of such coverage.[118]

The information provided to Plaintiff also contrasts with *Mason*, where the offer was not highlighted or otherwise emphasized in any way, was not in a separate section, and was loosely spread across 8 pages.[119] Here, the offer is contained on one page with separate pagination distinguishing it from other documentation and halfway through the twenty-two page application.[120] The offer lists the cost of the premium based on the minimum bodily injury limits selected by Plaintiff and explains in plain language what this coverage protects against. Additionally, unlike *Mason*, there is evidence in the record that oral representations of such coverage were made to Plaintiff by Ms. Alvarado during the in-person application process.[121]

---

[115] *Mason v. United Serv. Auto. Ass'n.*, 697 A.2d 388, 394 (Del. 1997).

[116] *Shukitt v. United Serv. Auto. Ass'n.*, 2003 WL 22048222, at *4 (Del. Super. Aug. 13, 2003).

[117] *Knapp v. United Serv. Auto. Ass'n.*, 1997 WL 719340, at *3 (Del. Super. Sept. 12, 1997), *rev'd on other grounds,* 708 A.2d 631 (Del. 1998).

[118] In *Mason*, the subject form read: "AUTO INSURANCE IN DELAWARE." 697 A.2d at 391. In *Knapp*, the forms provided by the insurance company did not clearly indicate that an offer of additional insurance was being made. 1997 WL 719340, at *3. The forms only described the nature of coverage, that such cover could be rejected, and that [h]igher limits of UM, up to your Bodily Injury limits, are available." *Id.* at *2.

[119] *See Mason,* 697 A.2d at 394.

[120] *Mason*, 697 A.2d at 394.

[121] Alvarado Aff. ¶ 6-9.

32

The offer of coverage explains in plain language that the offer of UM/UIM coverage is based on Plaintiff's current liability coverage limits and that other coverage may be available if Plaintiff changes his liability coverage. The Required Statement lists Plaintiff's currently liability coverage of $25,000 each person/$50,000 each accident. The signature page includes language directly above Plaintiff's signature line that explains the purpose and scope of coverage that would not be included if Plaintiff signed the waiver.

Unlike in *Campbell*, where the court denied the defendant's motion for summary judgment because the plaintiff was not provided with the cost of UM/UIM coverage,[122] here, the cost was clearly indicated on the "Offer of Uninsured/Underinsured Motorist Coverage."[123] The Court here cannot conceive of how Defendant could have more clearly indicated the cost of the premium for which Plaintiff was eligible. The Court notes that Defendant only provided the cost of coverage for the minimum UM/UIM coverage; however, this does not affect the Court's analysis here. Because Plaintiff selected the lowest BI liability limit and because an insured cannot select UM/UIM coverage in an amount greater than their BI liability limit, Plaintiff was only eligible to purchase the minimum UM/UIM coverage. Defendant was under no obligation to provide Plaintiff with tiers of

---

[122] 2022 WL 2663229, at *3 (Del. Super. July 6, 2022).
[123] Ex. A to Alvarado Aff. at 10.

UM/UIM coverage with corresponding costs when Plaintiff was not eligible to select from those higher tiers.

### D. Plaintiff has not established by clear and convincing evidence that a genuine issue of material fact exists

Plaintiff has not met his burden of pointing to specific facts that establish by clear and convincing evidence that a genuine issue of material fact exists. Plaintiff's assertion that he did not see or was not shown the documents in question, or that he did not read the documents that were presented to him, without any corroborating evidence, is insufficient to raise a genuine issue of material fact. Insureds are required to read their insurance policies before signing them and Plaintiff's choice not to do so cannot defeat Defendant's Motion for Summary Judgment.[124] Plaintiff's bare assertions, standing alone and in light of evidence to the contrary, that he was not provided with documentation after leaving McAfee Insurance Agency on October 8, 2018, and that he did not receive documentation via mail or email subsequent to that date, is insufficient to raise a genuine issue of material fact.

Plaintiff raises the issue that the statement of the cost of coverage was on a one-page document without a signature line. This fact on its own does not, considering all the other evidence of the information provided to him, raise a genuine

---

[124] *Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d 925, 928 (Del. 1982); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989); *Johnson v. Colonial Ins. Co. of California*, 1997 WL 126994, at *2 (Del. Super. Jan. 7, 1997).

issue of material fact that the premium was never disclosed to Plaintiff. This one-page document included a statement that Plaintiff indicated he was rejecting this coverage and instructed him to sign two separate documents to confirm the accuracy of this statement. The fact that the cost of coverage was not included in Defendant's denial letter of coverage is also of no moment. The information that Defendant provided to Plaintiff before he signed a written rejection of coverage determines whether the written rejection is valid, not the information defendant provided when it denied coverage. Plaintiff has cited to no case law in support of this assertion.

*Brezial-Williams*,[125] where the court found that there were genuine issues of material fact at the summary judgement stage, is distinguishable from this case. In *Brezial-Williams*, the parties had not yet engaged in discovery,[126] there was nothing in the record about the e-signature procedure, and there was a genuine issue of fact about whether Plaintiff was informed about the cost.[127]

In this case, Plaintiff has been deposed, Plaintiff confirmed in his testimony that he had to enter his signature individually each time,[128] Defendant produced a document showing the cost of coverage,[129] and Ms. Alvarado attested in an

---

[125] *Brezial-Williams*, C.A. No. N21C-01-143 (MMJ) (Del. Super. June 14, 2021) (TRANSCRIPT at 26-27).
[126] *Id.* at 9.
[127] *Id.* at 27.
[128] Dep. at 35-36.
[129] Ex. A to Affidavit, at p. 10.

uncontested sworn affidavit that the premium of $79 was discussed with Plaintiff.[130]

Ms. Alvarado further attests that not only was it her practice to explain the purpose

of uninsured/underinsured motorist coverage, but that she explained the purpose of

this coverage to Plaintiff in this instance.[131]  She attests that she reviewed the written

offer of coverage with Plaintiff[132] and that the coverages selected in the Required

Statement reflect those requested by Plaintiff.[133]  Finally, Ms. Alvarado attests that

documentation was provided to Plaintiff at the office appointment on October 8,

2018.[134]

### III.    Defendant was not Required to Make a Meaningful Offer under 18 *Del. C.* § 3902(a)(1)

A material change in the policy occurs when there is a change in the "basic

legal relationships between the parties that creates a new policy."  A new policy

resulting from a material change sits in direct contrast to a renewal of a policy which

by definition is "identical in form and substance, except as to date, and perhaps, the

premium."[135]  If there is a change to the "vehicle insured, the coverage provided,

and/or the identity of the named insured[,]" this constitutes a material change.[136]  The

parties agree that the addition of a vehicle to an auto insurance policy constitutes a

---

[130] Aff. ¶ 8.
[131] *Id.* ¶ 6.
[132] *Id.* ¶ 8.
[133] *Id.* ¶ 9.
[134] *Id.* ¶ 12.
[135] *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1064-65 (Del. 1984).
[136] *Id.* at 1066.

material change.[137]  The Court finds that Plaintiff made a material change to his policy when he added the 2005 Lincoln Aviator on December 28, 2018.[138]

### A. Case Law Addressing the Requirements of § 3902 in the Context of a Material Change Case

The vast majority of reformation cases involving a material change to the policy involve an insured who had BI liability limits above the minimum, who had purchased some level of UM/UIM coverage in the original policy, and claimed that they were provided with an offer of additional UM/UIM coverage when the made a material change to their policy.  With respect to this category of cases, the court conducts a § 3902(b) analysis.  The case law consistently holds that when the insured makes a material change to the policy, § 3902(b) requires the insurer to make another meaningful offer of additional coverage beyond what the insured had already purchased.[139]  In the context of these cases, the court uses "additional" to refer to

---

[137] *Id.* (holding that adding a vehicle to the policy and increasing coverage constitute material changes to the policy); *see also Singletary v. American Indep. Ins. Co.*, 2011 WL 607017, at *3 (Del. Super. Jan. 31, 2011) (parties stipulated addition of a new vehicle constituted a material change); *Drenth v. Colonial Penn. Ins. Co.*, 1997 WL 720459, at *2 (Del. Super. Sept. 15, 1997) (holding adding new car to policy constituted material change requiring new offer of coverage); *Garey v. Hartford Underwriters Ins. Co.*, 2011 WL 5299679, at *2, n. 18 (Del. Super. Oct. 31, 2004) (holding material change packet insurer mailed insured after insured added vehicle to policy did not make meaningful offer of maximum amount of UM/UIM coverage available).

[138] Ex. G. to Def. Mot. Summ. J.

[139] *Morris v. Allstate Ins. Co.*, 1984 WL 3641, at *1 (Del. Super. July 10, 1984); *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1066 (Del. 1984); *Mason v. United Serv. Auto. Ass'n.*, 697 A.2d 388, 394 (Del. 1997); *Drenth v. Colonial Penn Ins. Co.*, 1997 WL 720459, at *3-4 (Del. Super. Sept. 15, 1997); *Shukitt v. United Serv. Auto. Ass'n.*, 2003 WL 22048222, at *4-5 (Del. Super. Aug. 13, 2003); *Hodges v. Hartford Underwriters Ins. Co.*, 2008 WL 4152687, at *3 (Del. Super, Aug. 29, 2008); *Cooper v. Hartford Ins. Co.*, 2008 WL 4174761, at *2 (Del. Super. Mar. 31, 2008); *Garey v. Hartford Underwriters Ins. Co.*, 2011 WL 5299679, at *2-3, (Del. Super. Oct.

UM/UIM coverage beyond that which the insured had originally purchased. The use of "additional" in these cases is consistent with the narrow interpretation of *Banaszak*, that a meaningful offer under § 3902(b) is required for coverage in excess of the minimum.

The *Arms* decision is exemplary of the standard applied in this category of material change cases. The Supreme Court in *Arms* held that, "[c]onsonant with Delaware law, the offer of additional coverage must be made whenever the policy is changed in such respects as the vehicle insured, the coverage provided, and/or the identity of the named insured."[140] *Arms* involved an insured who had BI liability above the minimum ($100,000 per person/$300,000 per accident) and uninsured vehicle coverage of $10,000 per person or $20,000 per accident.[141] The insured made a material change to his policy and was not offered additional uninsured vehicle coverage when he made that change.[142] The Supreme Court affirmed the Superior Court's grant of partial summary judgment to the plaintiff and held that the plaintiff was entitled to increase his uninsured coverage to match his BI coverage

---

31, 2011); *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *5 (Del. Super. Feb. 26, 2021).

[140] 477 A.2d at 1066. *See also Mason*, 697 A.2d at n. 14, (quoting *Arms*, 477 A.2d at 1066); *Shukitt,* 2003 WL 22048222, at *1 (holding insurer failed to make meaningful offer of UM/UIM coverage after insured changed vehicles on policy); *Drenth,* 1997 WL 720459, at *3.

[141] 477 A.2d at 1061.

[142] *Id.* at 1061-62.

because the defendant did not provide the plaintiff with a meaningful offer of that additional coverage when he made the material change.[143]

In direct contrast to cases involving insureds who selected UM/UIM coverage in the original policy and then made a material change, § 3902 requires a distinct analysis for those cases involving insureds who rejected UM/UIM coverage in the original policy. Section 3902(a)(1) states, in relevant part, that "[n]o such coverage shall be required in or supplemental to a policy when rejected in writing [. . .] or upon any [. . .] amendment, alteration, modification, [. . .] unless the coverage is then requested in writing by the named insured."[144] Section 3902(a)(1) requires that, when an insured has rejected UM/UIM coverage in writing in the original policy, if the insured wants to add said coverage at a later date, the insured is required to request it in writing.[145]

With respect to reformation cases involving a material change, only *Singletary* and *Heasley* involve insureds who had the minimum BI liability limit and rejected UM/UIM coverage when they initially purchased the policy.[146] Both *Singletary* and

---

[143] *Id.* at 1066.

[144] 18 *Del. C.* 3902(a)(1).

[145] *Id. See Heasley v. Allstate Prop. and Cas. Ins. Co.,* 2022 WL 951261, at *3 (Del. Super. Mar. 28, 2022).

[146] *See supra* ANALYSIS, Section I.C.3. *Singletary v. American Indep. Ins. Co.*, 2011 WL 607017, at *1 (Del. Super. Jan. 31, 2011); *Heasley,* 2022 WL 951261, at *1, n. 5.

*Heasley* hold that the insureds were not entitled to reform their policy up to their BI liability but the analyses and reasoning in these two cases conflict with each other.[147]

### B. Plaintiff did not request UM/UIM coverage in writing as required by § 3902(a)(1)

The Court finds that § 3902(a)(1) required Plaintiff to request UM/UIM coverage in writing when he made a material change because he rejected UM/UIM coverage in writing when he originally purchased the policy.[148] The written rejection of coverage that Plaintiff signed on October 8, 2018 was valid even under the additional requirements of § 3902(b); therefore, if Plaintiff wanted to add UM/UIM coverage when he added a vehicle to his policy, he was required to request such coverage in writing pursuant to § 3902(a)(1). Because Plaintiff has not submitted any evidence that he made such a request, Defendant was not required to offer it.

Defendant submitted evidence that it actually went beyond the requirements of the statute when Plaintiff made a material change to the policy by affirmatively offering UM/UIM coverage and confirming in writing Plaintiff's rejection of said coverage for both vehicles.[149] Page two of the Declarations Page issued after Plaintiff added a second vehicle, reflects that Plaintiff rejected UM/UIM coverage for the 2005 Lincoln Aviator.[150]

---

[147] *See id.*
[148] 18 *Del. C.* 3902(a)(1). *See Heasley,* 2022 WL 951261, at *3-4.
[149] *See* Ex. G to Def. Mot. Summ. J. at 2-5.
[150] *Id.* at 3. The Declarations Page is dated December 31, 2018 and indicates that the change to the policy became effective on December 28, 2018.

Defendant's Exhibit G contains a detailed offer of UM/UIM coverage available, including the cost of UM/UIM coverage for each vehicle.[151] Exhibit G explains that Delaware law requires the policy provide for uninsured/underinsured motorist coverage unless the insured rejects such coverage in writing and stated that Defendant was offering such coverage up to the limits selected for Plaintiff's liability coverage.[152] This exhibit confirms that, as reflected on the Declarations Page, Plaintiff indicated he wanted to reject UM/UIM coverage.[153] The offer contained in Exhibit G states that Defendant offered UM/UIM coverage as listed below for the premium stated, that this limit is based on Plaintiff's liability coverage, and that other UM/UIM limits may be available if Plaintiff changes his liability coverage limits.[154] The UM/UIM coverage limit and corresponding premium for each vehicle is listed toward the bottom of this page: $25,000/$50,000/$10,000 split limits; premium for Vehicle 1: $87; Premium for Vehicle 2: $122.[155] This document also explain the protection that UM/UIM coverage provides.[156]

Plaintiff was also put on notice when he originally purchased the policy in October 2018 that, because he was rejecting UM/UIM coverage, he would be required to request such coverage in writing if he decided that he wanted to add

---

[151] *Id.* at 4-5.
[152] *Id.* at 4.
[153] *Id.*
[154] *Id.*
[155] *Id.*
[156] *Id.* at 4-5.

UM/UIM coverage at a later date.[157]   On the Rejection, the paragraph states, in relevant part, that "I understand and agree that this rejection of Uninsured/underinsured Motorist Coverage . . . shall also apply to any . . . amended, altered, modified, or replacement policy . . .unless a named insured submits a request to add the coverage and pays the additional premium."[158]   The paragraph on Page three of the "Required Statement" immediately above Plaintiff's signature line confirms this same understanding.[159]

Plaintiff should have been aware from the time he initially purchased the policy that he would need to affirmatively request UM/UIM coverage in the future since he rejected it in the first instance.   Plaintiff also had ample opportunity to accept the offer of UM/UIM coverage when he added a second vehicle and declined to do so.[160]   Plaintiff has no basis on which to reform his policy now.

## CONCLUSION

For the reasons stated above, the Court finds that, even if it were to follow a broad interpretation of *Banaszak* and apply §§3902(a) and (b), Defendant has met its burden to succeed on its Motion for Summary Judgment.   Defendant has established that there is no genuine issue of material fact that Defendant provided

---

[157] Ex. D. to Def. Mot. Summ. J.
[158] *Id.*
[159] Ex. C. to Def. Mot. Summ. J.
[160] *See* Ex. G to Def. Mot. Summ. J.

Plaintiff with sufficient information to constitute a valid written rejection of coverage and provided a meaningful offer of said coverage. The Court holds that Plaintiff's written rejection is sufficient to obviate the need for a fact finder to look into the intent behind the rejection and that Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**